# ROCKINGHAM,
## DECEMBER TERM, A. D. 1840.

### HAVEN *vs*. WENDELL & a.

Where a witness testified that he was present at a conversation, and made a memorandum of it immediately after it took place; that he had now no recollection of all the particulars, but that he had no doubt that the facts stated in the memorandum were true; and that he should have sworn to them from recollection within a short time afterwards—the memorandum was admitted in evidence, in connection with his testimony, to show the particulars of the conversation.

ASSUMPSIT, on a bank check, drawn by Isaac Wendell, and indorsed by the defendants, who are partners under the firm of A. & J. Wendell.

There was also a count for money lent.

On the trial the plaintiff produced the bank check mentioned in the first count, the signature and indorsement of which were admitted. He also produced as a witness, John Haven, who testified that he had a conversation with Abraham Wendell, one of the defendants, on the pavement in front of the New-Hampshire Bank, on the subject of this check, some time after the failure of the defendants. He could not now recollect the particulars of that conversation, or when it took place, further than that said Wendell said he considered himself holden as indorser thereon; and that he, the witness, supposing the facts then stated might be useful to the plaintiff, went immediately into the bank, and made a memorandum of them, in writing, which he gave to the plaintiff. That the conversation was stated when the matter was fresh in his recollection; and if he had been called upon, soon after, to testify upon the subject, he should have sworn from memory to every particular there stated.

A paper being shewn to him, he said that was the memorandum, but he could not from reading it undertake to say that he now recollected the facts, or knew them, otherwise than by finding them in his hand writing; but he had no doubt they were true, and that he should have sworn to them from recollection at or near the time.    The memorandum referred to was as follows : " Abraham Wendell said to me, this 30th day of October, 1828, that he left, some time since, with William Haven, cashier of the New-Hampshire Bank, a check, signed by Isaac Wendell, on the Branch Bank, Portsmouth, drawn payable in a few days, which check was in favor of Abraham and Jacob Wendell, and indorsed by them; that said William Haven paid them the amount of said check, in a note against their mother and in cash—that at or before the time the check was due, he called on Mr. Haven, and requested, as from his brother Isaac, that he would delay for a few days longer the presentation of the check, which he consented to, during which delay they all failed ; that he now considered the firm of A. & J. Wendell held as indorsers of said check.            J. H."

Said memorandum, with the testimony of the witness, as before mentioned, was admitted as evidence ; to which the defendants excepted, and moved for a new trial.

*Cutts, Bartlett & Emery*, for the defendants, cited 14 *Amer. Jurist* 144, *cites* 2 *Bailey's R.* 475 ; *Chitty on Bills* 239 ; *Kyd* 126 ; *Bayley* 161, (*Phillips & Sewall's Ed.*) ; 14 *Mass.* 116, *Stanton* vs. *Blossom ;* 1 *D. & E.* 170, *Tindall* vs. *Brown.*

*T. Farrar*, for the plaintiff, cited 8 *Barn. & Cres.* 14, *Maugham* vs. *Hubbard ;* 3 *T. R.* 752–4, *Doe* vs. *Perkins, and Tanner* vs. *Taylor ;* 3 *Esp.* 106, *Rogers* vs. *McCarthy ;* 1 *Esp.* 440, *Vaughan* vs. *Martin ;* 2 *Wend.* 513, *Hart* vs. *Wilson ;* 1 *Swift's Ev.* 111 ; 1 *East* 460 ; 3 *T. R.* 749 ; 3 *Dane's Dig.* 287 ; 2 *Camp. R.* 112, *Burroughs* vs. *Mar-*

*tin ;* 2 *Gwill. Bac.* 597, *Ev. E.* 1; 15 *Mass. R.* 69, *Cushing* vs. *Gore ;* 16 *Pick. R.* 535, *Franklin Bank* vs. *Freeman ;* 1 *Mason* 243, *Bullard* vs. *Bell ;* 4 *Esp.* 9, *Carey* vs. *Gerrish.*

PARKER, C. J. If a witness may use a memorandum, made by him at the time when the facts are alleged to have taken place, for the purpose of refreshing his memory only, this verdict must be set aside. The memorandum itself was here admitted in evidence, in connection with his testimony that he heard certain matters—that he made a memorandum of those matters—that this is that paper—and that it is a true statement of what then took place. The memorandum, therefore, became part of the testimony of the witness; and the question is, whether the paper itself may be received to show the particulars of what then occurred, the witness testifying that he has now no recollection of all the particulars, but that he has no doubt the facts there stated are true, and that he should, within a short time subsequent, have sworn to them from his recollection.

It is not to be doubted that the ruling in some cases heretofore would exclude the testimony. But the cases on this branch of evidence have not been uniform, and it becomes necessary to make an extended examination of some of them.

In *Doe* vs. *Perkins,* 3 *D. & E.* 749, cited for the plaintiff, Aldridge, the witness whose testimony was objected to, went round with the receiver of the rents, to the different tenants, whose declarations, respecting the times when they severally became tenants, were minuted in a book. When Aldridge was sworn, he referred to extracts from that book, confessing he had no memory of his own of the specific facts. It was held that this was inadmissible; but it seemed to be admitted that the original might have been produced and used. The entries were little else than memoranda of the confessions or declarations of the tenants, as to the time of their holding. The necessity of admitting the proof is

not apparent, and it can hardly be said that the transaction was in the usual course of business.

In *Tanner* vs. *Taylor*, cited by Mr. Justice Buller in the above case, which was an action for goods sold, the witness who proved the delivery took it from an account which he had in his hand, being a copy as he said of the day-book left at home. Baron Legge said if he would swear positively to the delivery, from his recollection, and the paper was only to refresh his memory, he might make use of it. But if he could not from recollection swear to the delivery, any further than as finding them entered in his book, then the original could have been produced.

The clerk of a notary who had made, in the notary's register, a memorandum of the residences of the indorsers of a note, was permitted to swear that he recollected such a note was in the office—that the residences of the indorsers were inserted by him in the register—that from that entry being made by him, it was expressive to his understanding that the notices were made out and addressed by him ; but independent of the memorandum he should have no recollection that the notices were made out. 2 *Wend. R.* 513, *Hart* vs. *Wilson.* The entry of the residence of the indorsers, in this case, could not have been evidence, to any extent, of itself. It could not have been admitted to show that the indorsers lived at a certain place. But that was all that it purported to state. The witness swore to his belief of certain facts, from finding the memorandum of the residence in his hand writing.

A witness has been admitted to prove the execution of a deed, who deposed that he did not recollect witnessing it, but knew the attestation to be in his hand writing. 8 *Pick. R.* 143, *Russell* vs. *Coffin.* The attestation was used as evidence, in connection with the testimony of the witness that he made it, to establish a fact of which the witness had then no recollection ; and not to refresh the memory of the witness.

Similar testimony was admitted, where the witness was not quite certain that it was her hand writing. 3 *Fairf. R.* 389, *Wheeler* vs. *Hatch.*

A witness, called to prove the receipt of a sum of money, was shown an acknowledgement of the receipt of such money, signed by himself; and, on seeing it, said that he had no doubt he received it, although he had no recollection of the fact. It was held that this was sufficient parol evidence of the payment of the money, and that the written acknowledgement having been used to refresh the memory of the witness, and not as evidence of the payment, did not require any stamp. 8 *Barn. & Cres.* 14, *Maugham* vs. *Hubbard.* But the written acknowledgement must have been used as evidence to a certain extent, in connection with the testimony of the witness. If it had been merely shown to the witness to refresh his memory, no controversy could have arisen whether a stamp was required. And after seeing it, he still testified he had no recollection of the fact.

It would seem, from *Burton* vs. *Plumer*, 2 *Adolph. & Ellis* 341, that a witness is not to be allowed to refresh his memory by a copy of an entry, not made by him contemporaneously. But if the paper thus used does not become in any degree an instrument of evidence, and the witness in fact swears at last from recollection, it might admit of doubt whether the court ought to regulate the means by which he merely excites his memory. *See Tanner* vs. *Taylor, before cited.*

Mr. Chief Justice Savage, in delivering the opinion of the court, that a written memorandum made by a witness of a conversation between the parties, might be referred to by him to refresh his memory, but he must swear to the truth of the facts, or his statement is not evidence, refers to the case, Tanner *vs.* Taylor, and says, it " does not prove that the original memorandum should have been received in this case. In case of goods sold and delivered, a merchant's books are evidence to a certain extent ; but that is very differ-

ent from a memorandum made by a witness for his own convenience, not sanctioned by the parties, and where no necessity exists requiring the admission of such a paper, as is frequently the case with merchants' books." *5 Wend. R.* 301, *Lawrence* vs. *Barker.*

In *Feeter* vs. *Heath*, 11 *Wend.* 485, the rule seems to be recognized, that the witness should, after the inspection of the document or memorandum, be able distinctly to recollect the facts—but the Chancellor adds, "such is the frailty of human memory, that very few witnesses would be able to testify as to particular dates, numbers, quantities and sums, after the lapse of a few years, if they were not permitted to refer to papers and writings which they knew to be correct at the time they were made."

In a subsequent case the court held that "when original entries are produced, and the person who made them, or saw them made by another, knowing them at the time to be true, testified that he made the entries, or saw them made, and that he believes them to be true, although at the time of his testifying he has no recollection of the facts set forth in the entries, such evidence is admissible, and *prima facie* sufficient to establish the fact evidenced by the entries. Such proof, however, it seems will not be received where only a copy of the original entries is produced." 16 *Wend.* 586, *Merrill* vs. *Ithica R. R. Co.* The original entries were check roll books of labor performed on the rail-road, by laborers employed by the plaintiffs.

The question in that case was, whether the rolls were evidence, and sufficiently verified for that purpose ; and the case therefore not precisely like the present ; but in the very elaborate and learned opinion of Mr. Justice Cowen, he has collected several cases bearing directly upon the question in this case. Among them is *Sandwell* vs. *Sandwell,* 2 *Comb.* 445, at nisi prius. Holt, Ch. J., said : "Where a witness swears to a *matter*, he is not to read a paper for evidence, though he may look upon it to refresh his memory ; but if

he swears to *words*, he may read it, if he swears that he presently committed it to writing." If this be correct, it would show that the witness might read the memorandum in the present case, for he is swearing to the words used by Abraham Wendell. There is not one rule in relation to the proof of words used in traducing the character of an individual, and another for words used in admitting the existence of a liability. And Mr. J. Cowen, in the opinion just cited, remarks, that " A great variety of American cases have arisen, where the witness having made the entry or memorandum could swear to his belief of its truth, but had entirely forgotten the facts which he recorded, in which the paper thus attested has been received and read in evidence to a jury."

" Where a person called to prove the testimony of a deceased witness, given on a former trial, produced in court minutes of such testimony, taken by him at the time, and stated that he intended to take down the words of the witness, and all that he deemed material, but could not say that he had taken his precise words, or every word of the testimony, and that he could not now swear to the testimony except from his minutes, it was held that such evidence was admissible to prove the testimony of the deceased witness." 15 *Wend.* 193, *Clark* vs. *Vorce.* This is a relaxation of the doctrine laid down in 6 *Cowen* 165, *Wilbur* vs. *Selden.* It may be said that the writing was made in the usual course of business; that is to say, it was made while the witness was pursuing his profession as an attorney; but so far as appears, it was made for his own use only, to enable him to recollect what the witness stated, and it was admitted as part of his testimony, notwithstanding he was no longer able to recollect the statement. It was not a question whether a paper was sufficiently verified to be admitted in evidence to establish a fact, but it was using the paper in default of the witness' recollection, on the ground that he made the memorandum when he had knowledge that what it contained was true.

Haven *v.* Wendell.

Where the plaintiffs sent copies of a declaration to a deputy sheriff, to serve on a defendant, and the deputy returned one of them with a certificate of service, and in a letter enclosing the copy wrote that the defendant said he would pay the plaintiff's demand, but no more than $5 costs—the letter being lost, and the deputy being unable to say more than that the defendant made some offer of settlement, but he did not recollect what it was—nor did he recollect the contents of the letter written by him, but thought it probable it contained the proposition made by the defendant, and what he wrote was undoubtedly as directed by the defendant—the evidence was held to be inadmissible. 17 *Wend.* 238, *Clute* vs. *Small.* Mr. Justice Cowen said, "there was only one of two ways in which the witness could be allowed to speak : that is, either from positive recollection, or from seeing the letter and knowing it to be his own statement. It might then have been treated as his memorandum ; and, according to some authorities, might have been received as an original entry ; but even in such case, if he could not remember the transaction, he must have been clear that he would not have so stated it unless true at the time."

The principle as thus stated covers this case. It may, to be sure, be said that, referring to the facts of the case, the letter was written in the course of business. The witness spoke of it as a proposition, but the letter did not so state. It was written to inform the plaintiff of what the defendant said, that he might act upon the information.

The memorandum in this case was made and communicated to the plaintiff with the same object. It would not have added to its character, as admissible testimony, if it had assumed the form of a letter, and been addressed to the plaintiff.

A witness, upon being shown a writing signed by him, certifying to the posting up of a notice at his public house, testified that the signature was his hand writing, and he had no doubt the certificate stated the truth, although he had no

recollection of the fact. It was held that this was sufficient evidence of the posting up of the notice; and Mr. Justice Morton in delivering the opinion remarks, "this may not be in exact conformity with the rule that a witness shall testify only from his present recollection; but how much more satisfactory and certain is such a written instrument, than the memory of any witness, after such a lapse of time. It is every day's practice to prove the execution of deeds and other instruments by subscribing witnesses, who know nothing about them except that their names were written by themselves." 20 *Pick. R.* 418, *Alvord* vs. *Collins.* It can hardly be said that the making of this certificate was in the usual course of the taverner's business. It was not evidence of itself, but was a memorandum by which he might be enabled to recollect the facts afterwards.

These are some of the principal authorities bearing upon this question. If it be conceded that none of them come up precisely to this case, there are several so near that the difference is hardly sufficient for the foundation of a sound distinction.

And we are of opinion that the admissibility of the paper in evidence, in connection with, and as a part of the testimony of the witness, may be established upon the soundest principles.

It is not disputed that the witness might have been admitted to testify to these facts as existing in his recollection. If the paper be authentic, his record of the fact, made at the time when he was much less liable to mistake, is much better than his recollection of the facts so long afterwards.

It is agreed, and no doubt exists, that he might refer to the paper to refresh his recollection, and then testify to the facts there stated, as existing in his recollection. But if he has not a recollection without the use of the paper, the evidence is after all derived mainly from the paper, and is no better than his declaration that he made the paper at the time —that he has no doubt it contains the facts as they took

Haven *v.* Wendell.

place—that he should have sworn to them soon after, from memory, although he does not now recollect them except by the paper.

So far from the admission of such testimony being dangerous, there is less danger than in the admission of the evidence of the witness that he recollects the facts, without the production of the paper as part of his statement; for the opposite party has the advantage of an inspection of the paper, and of cross examination founded upon its appearance, and respecting all the particulars stated in it.

If the witness is unprincipled enough to fabricate a memorandum, or use a fabricated paper, he can as readily swear to the facts it contains as existing in his recollection, and that he made the paper which he uses, at the time, as he can that he made the one which he produces, and which becomes part of his testimony by his statement that he made it at the time, and has no doubt it contains a true statement of what took place. If false, he may as readily be convicted of perjury in the latter case as in the former, and perhaps more readily, as the paper itself may assist.

A plot may be quite as easily framed, and carried into execution, where the recollection is required to come up to the contents of the paper, as if the paper itself may be received. There is as little difficulty in manufacturing testimony in that way as the other.

By the opposite course of excluding the evidence, a just case is made to depend upon the strength of memory of the witness, or upon his being less scrupulous than another in his statements. One case is saved because the memory of the witness is strong, and another lost because the memory is less retentive. This undoubtedly is true in relation to many cases, but the instances should not be multiplied without necessity. One witness, after having examined the memorandum, and having no doubt the facts are true, will finally imagine, and swear, that he recollects them; while another,

of a more scrupulous conscience, will not go beyond the testimony given by the witness in this present case.

If it be said that such evidence ought not to be admitted, because the witness, however honest, may have set down but a part of what took place, and after the lapse of time forgotten all the residue ; the same remark applies with equal force when he uses a written memorandum, and thereby brings his flagging recollection up to a statement of its contents.

It will be for the jury to judge, from the matter and manner of the testimony, as connected with all the circumstances of the case, how much dependance is to be placed upon the testimony thus derived.