# WEBSTER & *a. v.* CLARK.

The acts of an agent, within the legitimate scope of his agency, bind the principal.

Where the principal informed the clerk of the plaintiffs that he might send certain goods to his agent, who was engaged in selling similar goods for the principal, the statements of the agent that he had received the goods are competent, in connection with other evidence, as tending to show a sale and delivery.

The books of account and suppletory oath of a party are incompetent to show a sale and delivery of goods, if it appears from the books that the goods were delivered to a third person.

But where goods are sent to an agent, by direction of the principal, and are charged to the principal as delivered to the agent, it is not necessary for the vendor to call the agent to prove the sale and delivery. He may make out his case by any other competent evidence.

Upon the question of a sale and delivery of goods, the testimony of a witness that he selected the goods, then called them off to an entry clerk, who entered them on the sales-book as called off, and that the witness then took the book, and, as he delivered the goods to the packer, he himself checked the several items on the book, is primary in its character, and may be introduced without calling the entry clerk.

The memorandum of a transaction, reduced to writing at the time, or immediately after the occurrence of the events, it recites, is admissible in evidence in connection with the testimony of the witness showing the transaction, if the witness will testify that he had no doubt that the facts stated in the memorandum were true, and that he should have sworn to them from recollection a short time afterwards.

Where a witness testified that certain entries were made in a book by his direction; that he examined them at the time, and knows that they were correct; that he could have stated from recollection, at that time, what the entries were, and would have sworn to them from recollection a short time afterwards—*held*, that the book in which the entries were made was admissible in evidence, in connection with the oath of the witness showing the transaction.

Where a paper is in the hands of the opposing party, notice to produce it must be given before its contents can be shown by parol. But where a witness testified that he was ordered by the defendant to send bills of goods to him through the mail—*held*, that, although the witness could not state the contents of the bills without notice being first given to produce them, yet that he might testify that he sent bills to the defendant, according to his directions, without such notice.

In the direct examination of a witness, it is the better practice not to put questions in the alternative.

ASSUMPSIT, on an account annexed to the writ, amounting to $260,22. The account consisted of a number of items of clothing, under date of November 7th, 1853; also, of several items of the same kinds of goods, under date of November 11th, 1853, and of two items under date of December 12th, 1853. There was also a credit of $104,34 given December 2d, 1853.

The writ also contained a general count for goods sold and delivered.

Plea, the general issue.

The plaintiff's case was, that they delivered the goods to one *John T. Neal,* by the directions of the defendant,—Neal being, as they alleged, the agent of the defendant.

To sustain the action, the plaintiffs introduced a witness, who testified, in substance, that he was clerk of the plaintiffs in 1853, and on the 4th of November of that year, visited Concord, in this State, to procure orders for goods; that he called into the clothing store kept by Neal, and observed as he went in that the sign was " John T. Neal, Agent;" that Neal agreed that the plaintiffs might send him a bill of goods of clothing, such as was kept in the store; that the witness then asked him for whom he was agent, and, in consequence of his answer, he called on the defendant, and inquired of him if Neal was his agent, and he said he was. The witness then told him that he had been into Neal's, and Neal would like to have him send a bill of clothing, and he wished to know of the defendant if he consented. The defendant replied that he did, but told the witness not to send too large a bill at a time, and that whenever he sent the goods to Neal, to send him, Clark, the bill of the same. The witness inquired if he should send Neal other bills of goods, and Clark said he might, but always to send the bills themselves to him, Clark. The witness then returned to Boston, and in the course of three or four days sent a box of goods, consisting of clothing, directed to Neal, and sent a bill of the same to the

defendant. That Neal afterwards ordered another small bill, which was sent on the 11th of November, and another on the 12th of December, and that the bills of the same were sent to Clark through the mail. He made them out and put them into the post office himself.

The witness, however, testified that his knowledge of the goods being sent and received consisted in this: that the witness selected the goods out himself; that he then called them off to the entry clerk, who entered them upon the sales-book; that the entry clerk called them back to him from the book, and the witness examined the parcels as they were called, to see if they were correct; that he then took the book himself, and superintended the packing, and as he passed the articles to the packer, he, the witness, checked them on the book; that he knows that the entries were, at the time, correct; that he could have stated from recollection, at that time, what the entries were, and would have sworn to them from recollection, a short time afterward. That the first parcel, after it was thus packed and directed to Neal, was delivered to the regular truckman of the plaintiffs, to be carried to the depot; that the two others were put up in the same way, to be sent by express, but whether they left the store or not the witness did not personally know. That after the first bill was sent, the witness was in Concord and saw Neal, who said he had received the goods, but he wanted the next ones to be cheaper; that after the second bill was sent, and before the third, he again saw Neal, who said he had received the goods, and that they suited him well; that he also saw him after the last bill was sent, and he stated that he had received them, and he found no fault with them. After this evidence, the plaintiffs were permitted to lay before the jury the book in which the witness swore the goods were entered, and which he identified as the entries made at the time, to be weighed by them, in connection with the oath of the witness, as tending to show the items of goods which were packed and directed by the

witness, as testified to by him. The goods were charged to Clark, as delivered to Neal, and checked on the book, as before stated. Another witness, introduced by the plaintiffs, testified that he was in the employment of Neal in November and December, 1853 ; that Neal's signs, cards and bills were " John T. Neal, Agent," but they did not state for whom he was agent ; that the swing-sign at the door was " John T. Neal, Agent," and that Clark was frequently in and out of the store, and engaged in conversation with Neal ; that while there, goods were received into the store similar to some of those sued for.

The defendant excepted to this evidence, as being, in the first place incompetent to show the agency of Neal, and, in the second place, as incompetent to show a sale and delivery of the goods; and he excepted specially, also, to the introduction of the book containing the entries of the goods, contending that inasmuch as it was inadmissible upon general principles, it could not be introduced in the manner in which it was. He also excepted that the witness could not testify that he put the bills into the post office, until it was shown that notice to produce the bills had been served upon Clark.

In the course of the trial a question was put, by the plaintiff's counsel, to a witness, in this wise : " Did you, or did you not, see put into the box four blue, pilot overcoats ?" The question was excepted to as leading.

The court overruled the several exceptions, and the case was submitted to the jury, who returned a verdict for the plaintiffs, which the defendant moved to set aside, for alleged error in the ruling of the court.

And it was ordered that the questions arising upon the motion be assigned to the determination of the superior court.

*George & Foster*, for the defendant.

1. The testimony of the witness for the plaintiffs, that

Webster *v.* Clark.

he sent to Clark a bill of the goods bought by Neal, was inadmissible. The bills themselves should have been produced, as furnishing the best evidence of their contents, unless a foundation had been laid for the introduction of secondary evidence. 1 Greenl. Ev. § 99.

2. The entry clerk, who made the entries in the book submitted to the jury, should have been called to prove those entries.

3. The fact that the goods were delivered to the regular truckman of the firm, is not competent evidence that they were delivered to the defendant. Proof of delivery to a common carrier is essential, in the absence of proof, that they were delivered to the defendant. *Gasset* v. *Godfrey*, 6 Foster's Rep. 418.

4. The book of accounts should not have been submitted to the jury. The book shows that the goods were charged to Clark as delivered to Neal. The sale and delivery should have been proved by Neal; *Eastman* v. *Moulton*, 3 N. H. Rep. 156 ; and the plaintiffs should not thus be permitted to submit the book to the jury, and evade the necessity of calling Neal, who was the proper witness to prove all the facts relative to the alleged agency as well as the alleged sale and delivery.·

5. The testimony that " after the first bill was sent," &c., Neal made certain admissions, seems clearly incompetent, because the bill referred to was not produced, and no notice was given to produce it. Neal's admissions referred to the contents of the bills sent, and we suppose a witness could not properly testify either about the sending of the bills or their contents, until a notice upon the defendant to produce them had been shown.

6. The question, " Did you or did you not put into the box four blue pilot overcoats," seems objectionable as directly suggesting to the witness the desired answer.

By this method of examination, an hour's conversation might be repeated by counsel to a witness, and he might

then be asked whether or not such conversation took place between himself and another.

"Questions are objectionable as leading, which, embodying a material fact, admit of an answer by simple negative or affirmative," (1 Greenl. Ev. 506;) and although "when and under what circumstances a leading question may be put, is a matter resting in the sound discretion of the court," (1 Greenl. Ev. 508;) yet the question arising here is not whether the court have the right to permit a leading question to be put, but whether by putting a question in the alternative, its leading character is avoided.

*Fowler & Mugridge*, for the plaintiffs.

I.   The fact that Neal was doing the business of the defendant, as his agent, was proved beyond all controversy, by the admission of the defendant, made to the plaintiff's clerk, at the time he negotiated the sale of these goods.

II.   The admission of Neal, while continuing and carrying on this business for the defendant, that the goods had been received, when called upon for that purpose, by the plaintiff's clerk, who had a right to make that inquiry and receive an answer thereto, was within the proper scope of Neal's agency, and competent to prove the delivery of these goods.   1 Greenl. Ev. 113; Story on Agency 138; *Biggs* v. *Lawrence,* 3 Term 454; *Clifford* v. *Bunton,* 1 Bing. 199.

III.   The books were properly received as memoranda. 1 Greenl. Ev. 437 and note; *Haven* v. *Wendell,* 11 N. H. Rep. 112; *Watson* v. *Walker,* 3 Foster's Rep. 471.

IV.   The question whether an interrogatory is leading or not, or if leading, whether it shall be put to the witness or not, is entirely in the discretion of the court trying the cause, and cannot be made a subject of revision or error in any other court.   1 Greenl. on Ev. 431, 435.

And, besides, we understand that the general practice has

Webster *v.* Clark.

been, in this State, to allow questions to be put in the man-
ner of the one stated in this case.

EASTMAN, J. We cannot entertain any doubt of the
competency of the evidence to show Neal to be the agent
of the defendant. He occupied a store on which was the
sign of " John T. Neal, Agent." On his cards and bills he
was designated in the same way. To the witness, who in-
quired of him for whom he was agent, he made a reply
which induced the witness to call upon Clark, and inquire
of him if Neal was his agent, and upon the inquiry being
thus made, Clark frankly answered that he was. He, more-
over, agreed that goods might be sent to Neal, as he had
desired. It also appeared that Clark was frequently in and
out of the store, engaged in conversation with Neal. This plain
admission of the defendant, coupled with the other circum-
stances, was entirely competent to show the agency, and thus
settle the first exception taken at the trial. It is unnecessary to
examine it further, as it appears to be yielded in the argument.

Neal's agency being thus established, it follows that what-
ever he might do within the legitimate scope of that agency,
would bind the defendant, as much so as if done by him-
self. Story on Agency § 126; Paley on Agency 200; 2
Kent's Com. 620; *Lobdell* v. *Baker*, 1 Met. 202; *Towle* v.
*Leavitt*, 3 Foster's Rep. 374.

Before any goods were sent, the defendant informed the
plaintiff's clerk that Neal was his agent, and that the plain-
tiffs might send goods to Neal. Neal, as the defendant's
agent, accordingly ordered several bills of goods, and after-
wards, between the ordering of each bill, stated that he had
received the goods, although he did not specify the quan-
tity. These acts and admissions of Neal were those of
Clark, and were competent to show that he had ordered
goods of the plaintiffs, and had also received goods. The
evidence was sufficient to charge the defendant for some
goods; for at least a nominal sum, if no more.

But it was excepted that the evidence introduced was incompetent to show a sale and delivery of the quantity of goods sued for. Can this exception be sustained? The witness saw the several bills or parcels packed himself, and superintended the same. The first bill, after being packed and directed to Neal, was delivered to the truckman, to be carried to the depot; and the others were put up to be sent by express. Now although this evidence alone would not be competent to prove a delivery, for the goods were not thereby shown to be in the hands of a regular common carrier, yet when we add thereto that the defendant, by his agent, afterwards, in speaking of the goods, said that they were received, the whole evidence, taken together, as disclosed in the case, was entirely competent to show a sale and delivery.

It was not necessary for the plaintiffs to call Neal, to show what he had done in the matter, or what goods he had received, for the acts of Neal were those of Clark, and it was sufficient to prove them. If Clark wished to disprove the receipt of the goods, it was for himself to call Neal and show it. The plaintiffs were not obliged to make out their case in that way. The rule laid down in *Eastman* v. *Moulton*, 3 N. H. Rep. 156, cited by the defendant's counsel, does not apply to a case of this kind. In that case, it was held that where a party offers to a jury his books of accounts, supported by his suppletory oath, as evidence of the sale and delivery of goods, if it appear by his book or by his examination that the goods were delivered to a third person, who might be produced as a witness, the book is not competent evidence. We do not question the correctness of that decision. There the party endeavored to sustain his account by his own oath and book, a species of evidence that is not allowable, if it appears that there is any better in existence. It is only from the necessity of the case that the party who keeps his own books and makes his own entries is permitted to testify. But here, the plaintiffs were

not seeking to make out their case in that way. They were not relying either upon their books or upon their own oaths, but upon the testimony of witnesses, who put up the goods as ordered, and upon the admissions of the defendant of their receipt. Their evidence was not, therefore, secondary, but was competent for the purposes for which it was introduced.

Neither was it necessary for the plaintiffs to call the entry clerk. He did not pack or deliver the goods, but simply made the entries as directed by the witness, another clerk, who was upon the stand. The knowledge of the entry clerk was not superior to that of the witness, and the testimony as to the goods that were packed was primary in its character. The witness selected the goods himself, called them off to the entry clerk, who made the entries, and the witness then took the book, passed the articles to the packer, checked them on the book as he passed them, and saw the packer put them up. Such evidence must certainly be equal in degree to that which could come from the entry clerk under such circumstances, and it was not necessary to call the entry clerk.

But the exception was specially taken to the introduction of the book containing the entries of the goods. Had the plaintiffs undertaken to make out their case by their books of account and suppletory oath, the book would clearly have been admissible, for it was not, as we have already seen, brought within the rule for the reception of books in such cases. But this book was not offered for any such purpose, but only as a memorandum of what took place at the time, in connexion with the testimony of the witness. And in that view it was correctly admitted. It comes within the principle of *Haven* v. *Wendell*, 11 N. H. Rep. 112, and of *Watson* v. *Walker*, 3 Foster's Rep. 471. The principle is this, that the memorandum of a transaction, reduced to writing at the time, or immediately after the occurrence of the events it recites, is admissible in evidence in connexion with

the testimony of the witness showing the transaction, if the witness will testify that he had no doubt that the facts stated in the memorandum were true, and that he should have sworn to them from recollection a short time afterwards. These entries, although not made by the witness' own hand, may, nevertheless, be of equal verity as though made by himself, for they were made under his directions, according to his orders, and he at the same time examined them and knew that they were correct. And we think they were admissible upon the principle of the cases stated, not as books of account, but as memoranda of the transaction made at the time.

The exception that the witness could not testify that he put the bills into the post office, until it was shown that notice to produce the bills was served upon Clark, appears to us to have been taken under a misapprehension of the position of the case. There is no doubt of the rule of law that secondary evidence of the contents of a paper cannot be given until the non-production of the original is accounted for; and that if the paper be in the hands of the opposing party, notice to produce it must be given before its contents can be shown by parol. But the witness here did not state the contents of the bills, nor does it appear that he was offered for the purpose of stating them. The plaintiffs were not seeking to make out the quantity of the goods in that way, but by the testimony of the witness showing that the goods had been ordered and received, and that a memorandum was made of them at the time. His testimony, that he made out bills and put them into the post office, was merely to show that he complied with the directions of Clark in that respect. It was not to show the items or contents of the bills, and it was, therefore, unnecessary to give any notice to produce them.

The only remaining exception, taken at the trial, relates to the form of the question that was permitted to be put to the witness. In the earlier practice in this State, it is be-

Webster *v.* Clark.

lieved to have been very general to permit questions to be put in the alternative, even when it was quite apparent that the answer was suggested by the question. And this practice, although not so general as formerly, has continued, to a considerable extent, to the present time. It has, however, been regarded as under the control of the court, at the trial, and has been treated as one of those matters which may properly enough be determined at the time.

Where questions are long, and embrace matter which, it is apparent, may lead the witness to an answer favorable to the questioning party, it ought not to be permitted, unless the court, in its discretion at the trial, is of opinion that the testimony cannot otherwise be fairly obtained. Some witnesses, who are strictly honest and truthful, may yet be so obtuse or embarrassed as to be unable to tell what they know, without having their attention particularly called to the matter by various questions, and of this the court, at the trial, must judge. The question put, in this case, was not of that character which has heretofore been regarded as particularly exceptionable in our practice, and the verdict cannot be disturbed on that account. Still, we think the better practice to be, not to permit questions to be put in the alternative, unless it is quite apparent that the truth cannot be otherwise obtained from the witness. Questions thus put too often, suggest to the witness indirectly, if not directly, the answer desired, and are open to the general objection of being leading questions.

*Judgment on the verdict.*