## STATE ex rel. JNO. NOWAKOWSKI v. LOCKRIDGE, County Judge.

No. A-1292.   Opinion Filed October 10, 1911.

(118 Pac. 152.)

1.   JUDGES—Disqualification—Opinion as to Guilt or Innocence—"Prejudice." The constitutional provision which guarantees to every person charged with crime a trial without "prejudice," in so far as it relates to the judge who presides at the trial, does not include the opinion of the judge as to the guilt or innocence of the defendant; but, in order to disqualify a judge, it must be shown that he is biased against, or entertains ill will or hostility toward, the defendant, of such a character as might prevent him from giving the defendant a fair trial; and this must be shown as a matter of fact, and not as a matter of opinion of the defendant or any other person. A judge does not try the facts of a case. He simply passes upon the questions of law presented.

2.   JUDGES — Disqualification — Judges as Witnesses—"Prejudice." The mere fact that a judge may be a witness in a case, or that he has conducted a preliminary examination which resulted in the prosecution of a defendant, in the absence of any showing of personal bias or prejudice upon the part of such judge against the defendant, does not constitute such "prejudice" as will disqualify the judge from presiding at the trial of the defendant.

(Syllabus by the Court.)

Application, on relation of John Nowakowski, for writ of mandamus against Ross F. Lockridge, County Judge. Writ denied.

The brief for relator clearly stated the case as follows:

"On the 11th day of July, 1911, John Nowakowski, the petitioner herein, was being prosecuted in the county court of Pottawatomie county, Okla., for an alleged violation of the prohibitory liquor law of the state of Oklahoma. That on or about said last-mentioned date, the petitioner herein filed his application for a change of judge in said cause, alleging that he could not have a fair and impartial trial before the Honorable Ross F. Lockridge, the respondent herein and the county judge of said county. The petition and application for a change of judge, as aforesaid, were denied, and the said Honorable Ross F. Lockridge, the respondent herein, refused to certify his disqualification. That upon the refusal of the respondent to certify his disqualification the petitioner filed in this court his petition for an alternative writ of mandamus that the respondent herein either certify his disqualification, or show cause why he should not do so. That on the 5th day of September, 1911, the respondent herein returned into this court his answer and return to said writ. The petitioner herein set up in his petition for said writ of mandamus that the respondent herein was disqualified to sit as trial judge in the trial of petitioner for the reason that respondent had held a court of inquiry in the town of McLoud, in said county and state, and at said court of inquiry witnesses were examined as to whether the petitioner had violated the prohibitory liquor law of this state, and that as a result of the holding of said court of inquiry an information was filed against petitioner, charging him with the violation of the prohibitory liquor law of said state, and he was arrested for said offense, and was about to be placed upon trial before the Honorable Ross F. Lockridge on said charge; and the petitioner contends that the Honorable Ross F. Lockridge, in holding the said court of inquiry as aforesaid, inquiring into and having the petitioner informed against and arrested, that the said Honorable Ross F. Lockridge, the respondent, became so biased and prejudiced against the petitioner that the petitioner could not obtain a fair and impartial trial in said county court if the said respondent presided as trial judge therein."

In the answer and return to the alternative writ of mandamus made by the respondent the following reply is made to

the ground relied upon by petitioner to secure the·writ of mandamus:

"This respondent further admits that, on or about the 8th day of July, 1911, a court of inquiry was held in the town of McLoud, Pottawatomie county, and that witnesses were sworn and examined before him, as by law provided for investigation of violations of the prohibitory laws in said community; and respondent alleges that upon taking of such testimony, it being shown that there was probable cause to believe that certain persons had violated the provisions of the prohibition laws of the said state, the county attorney of Pottawatomie county prepared informations and filed the same, charging such persons with offenses, and that John Nowakowski was one of such persons charged. But the respondent denies that the said inquiry at McLoud was held at his instigation, or for the express purpose of apprehending and placing any particular person or persons upon trial. but alleges the facts to be that a request was duly filed in the county court of Pottawatomie county, on the 6th day of July, 1911, by Chas. W. Friend, deputy county attorney of said county, requesting the respondent to hold an inquiry at the said town of McLoud, and to issue subpœnas for certain witnesses therein, and for any other witnesses that might have knowledge of violations of the prohibition laws. A copy of the said request is hereto attached, marked 'Exhibit A,' and made a part of this return. And thereupon, on the same day, to wit, the 6th day of July, 1911, the respondent made an order granting the said request which had been made by the said county attorney according to the provisions of the laws of the state, and ordered that subpœnas be issued for the witnesses therein named, and other witnesses that might have knowledge of the violations of the prohibition law, requiring them to appear before the respondent on the 6th day of July, 1911, at the city hall at McLoud, Okla., at 10:00 o'clock a. m. of the said day. A copy of the said order is hereto attached, marked 'Exhibit B.' And the respondent especially denies that the said court of inquiry was held for the purpose of apprehending and placing the said John Nowakowski on trial for violating the prohibition liquor law of the said state, but alleges that the same was held for the purpose of inquiring into and investigating the violations of the prohibition law generally in said community."

*A. J. Carlton* and *Baldwin & Pitman,* for relator.

*J. H. Maxey* and *C. P. Holt,* for respondent.

FURMAN, P. J.   (after stating the facts as above).   In their brief in support of the petition for mandamus, counsel for relator state their position in the following language:

"It is the contention of the petitioner that the holding of the court of inquiry by the respondent, as set forth in petitioner's petition and admitted in the answer and return of the respondent, that the respondent became in law and in fact disqualified to preside as judge of the county court in the trial of this petitioner.   While there are other allegations alleging disqualification of respondent, the above is the only point which we desire to press, and the one upon which we rely in this cause as a reason why the respondent is disqualified to preside as trial judge in the county court in the trial of the petitioner upon the charge aforesaid."

If this contention be true, then every county judge who issues a warrant for the arrest of a defendant upon an information is disqualified from trying the case.

Section 6577, Snyder's Comp. Laws of Okla. 1909, is as follows:

"When an information, verified by oath or affirmation, is laid before a magistrate, of the commission of a public offense, he must, if satisfied therefrom that the offense complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it, issue a warrant of arrest."

In the case of *De Graff v. State,* 2 Okla. Cr. 519, 103 Pac. 538, this court said:

"From this it is seen that the warrant of arrest must be based upon the information.   The statute might have provided that the warrant of arrest should be issued upon an affidavit, or affidavits, which stated facts sufficient to satisfy the magistrate that an offense had been committed, and that there was reasonable ground to believe that the party charged had committed it; but there is no such provision in our statute.   On the contrary, by the express language of the statute, the information is made the root and foundation of the matter, so far as the issuance of the warrant of arrest is concerned, and this information must be verified by oath or affirmation.   Another thing about

this statute which must not be overlooked is that the magistrate who issues the warrant is the person who must be satisfied that an offense has been committed, and that there is reasonable ground to believe that the defendant did commit it. This calls for the exercise of discretion on the part of the magistrate who issues the warrant. It is a judicial act on his part."

The De Graff case was reaffirmed in *Bowen v. State,* 5 Okla. Cr. 605, 115 Pac. 376.

It is therefore seen that if we adopt the contention of counsel for relator, the effect would be to practically prohibit the trial of criminal cases by information in the county courts of the state, because in such cases the warrant must be issued by the county judge, and no warrant can be issued by a county judge, unless he is satisfied that the offense complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it. Even if it were not for this statute, we still could not agree to the contention of counsel for relator.

In the case of *Ingles v. McMillan, Judge,* 5 Okla. Cr. 131, 113 Pac. 998, after a full discussion of the authorities, this court said:

"The constitutional provision which guarantees to every person charged with crime a trial without prejudice, in so far as it relates to the judge who presides at the trial, does not include the opinion of the judge as to the guilt or innocence of the defendant; but, in order to disqualify a judge, it must be shown that he is biased against, or entertains ill will or hostility toward, the defendant of such a character as might prevent him from giving the defendant a fair trial; and this must be shown as a matter of fact, and not as a matter of opinion of the defendant or any other person. A judge does not try the facts of a case. He simply passes upon the questions of law presented."

In the Ingles case we examined every accessible authority, and did not find a single decision, where prejudice must be proven, in conflict with the doctrine we there announced. An examination of the Ingles case will show that in a number of states it has been expressly held that a judge is not disqualified upon the ground of prejudice from presiding at the trial of a case,

merely because he had previous thereto held a court of inquiry and bound the defendant over to trial.

In the case of *Johnson v. Wells*, 5 Okla. Cr. 599, 115 Pac. 375, an attempt was made to disqualify the county judge of Coal county upon the ground that he was a material witness for the defense; but this court refused to recognize this as being *per se* a ground of disqualification, and held that where this ground was relied upon the allegations contained in the petition must be such as to enable this court to determine, as a matter of fact, that such judge was thereby so disqualified. We now reiterate the statement that the mere fact that a judge may be a witness in a case does not, in and of itself, necessarily disqualify him from presiding in the trial of such case. It is true we have no statute directly providing that a judge may testify in a case over which he is presiding; but section 6494 of Snyder's Comp. Laws of Okla. 1909 is as follows:

"The procedure, practice and pleadings in the district courts of this state, in criminal actions or in matters of criminal nature, not specifically provided for in this Code, shall be in accordance with the procedure, practice and pleadings of the common law, and assimilated as near as may be with the procedure, practice and pleadings of the United States or Federal side of said court."

We must therefore look to the common law to determine what the true rule is. There is no higher or safer authority on this subject than Mr. Wigmore. On page 2529, vol. 3, Wigmore on Evidence, the law upon this subject is stated as follows:

"Coming, then, to the reasons set forth in the above quotations, it will be seen that one of them at least—the inability of the judge to administer the witness' oath to himself—is a petty obstacle (if it is one), which should rather be obviated (as it is in many jurisdictions) by a statute empowering the clerk to administer, rather than by the clumsy solution of disqualifying the judge. Furthermore, as to some of the other reasons, such as the impropriety of the judge passing upon his own claim of privilege, and the unseemliness of the judge being impeached for unveracity by the opponent, it may be said that these are the merest possibilities, that they may be trusted to be avoided through the combined good sense and discretion of counsel and judge, and that to establish a universal rule for the sake of rare

contingencies is unpractical and unnecessary. The only real and remaining objections to the judge's assuming the place of a witness seem to be in the first place, that he would be put thereby into a more or less partisan attitude before the jury, and would. thus, as a judge, lose something of the essential traits of authority and impartiality; secondly, that his continuing power as judge would embarrass and limit the opposing counsel in his cross-examination of the judge witness, and would thus unfairly restrict the opponent's opportunity to expose the truth; and, thirdly (though this is itself inconsistent with the first reason), that the judge's official authority would impress his testimony upon the jury with special, and therefore unfair, weight. In all these objections, there is a modicum of truth. Yet is it necessary on that account to lay down a universal prohibition? The force of the objestions would be most seen and would rise to an appreciable degree only when the judge became a principal witness, as in the case put by King Henry IV, where the judge had been an eyewitness of a murder. In all such intances (which are rare enough), the usefulness of his testimony would be known beforehand, and his own discretion, and the parties, could be trusted to send the cause before another judge for trial. But in the ordinary instance the judge's testimony is desired for merely formal or undisputed matters, such as the proof of execution of a certification, or of the administration of an oath, or of a deceased witness' former testimony. To suppose here a danger that the inconveniences above noted would occur in any appreciable degree is to be unduly apprehensive. Military commanders do not train cannon on a garden gate; and the law of evidence need not employ the cumbrous weapon of an invariable rule of exclusion to destroy an entire class of useful and unobjectionable evidence, in order to avoid embarrassments which can easily be dealt with when they arise. Since the trial judge has no interest to subject himself or counsel or jury to these supposed embarrassments, it may properly be left to his discretion to avoid them, when the danger, in his opinion, arises, by retiring from the bench before trial. begun, or by interrupting and postponing the trial, and securing another judge."

This authority clearly lays down the doctrine that a judge may be a witness in a case over the trial of which he is presiding. In addition to the reasons given for this rule by Mr. Wigmore, suppose during the trial of a case it is unexpectedly discovered that some material fact in the case is within the personal knowl-

edge of the presiding judge.  To deny to either party the right to use the presiding judge as a witness might result in the defeat of justice.  It should never be forgotten that the purpose of a trial is to discover the truth and to vindicate justice, and mere sentiment should never be permitted to interfere with this supreme purpose.  The contingency above suggested arose twice in the practice of the writer of this opinion.  On each occasion the trial judge was sworn and testified as a witness, and the incident passed off without the least embarrassment to the judge, the counsel, or to either party to the case.  We do not desire to be understood as holding that cases in which a judge may be a witness may not arise, in which it would be better for the judge to be disqualified from presiding at such a trial; but this matter should be determined by the circumstances of each case as they arise.  We only desire to say that the mere fact that a judge may be a witness in a case does not, in and of itself, necessarily disqualify him from presiding at the trial of such case.  Applying the principle hereinbefore stated to the case at bar, we hold that the fact that respondent conducted the preliminary examination which resulted in the prosecution of the relator, in the absence of any showing as to personal bias or prejudice upon the part of respondent toward relator, does not constitute such prejudice as will disqualify respondent from presiding at the trial of relator upon said charge.

The writ is therefore denied.

ARMSTRONG and DOYLE, JJ., concur.