## STATE v. J. M. RULE.

No. A-2274. Opinion Filed December 19, 1914.

(144 Pac. 807.)

1. **EVIDENCE—Other Offenses—Res Gestae.** As a general rule, evidence of other offenses, though of the same nature, is not admissible for the purpose of showing that the defendant is guilty of the particular offense charged. To this rule, however, there are well-settled exceptions. Those applicable to the question presented on the record in this case are as follows:

(a) Evidence of other offenses similar to that charged is relevant and admissible, when it tends to prove some element of the one charged, as when it shows or tends to show guilty knowledge or intent in the commission of the offense charged.

(b) Evidence that tends directly to prove the defendant's guilt is not rendered inadmissible because it proves or tends to prove him guilty of another and distinct offense.

(c) Evidence of a different offense from the one charged is admissible when both offenses are so closely linked or connected as to form a part of the res gestae.

(d) Evidence of other offenses is competent to prove the specific offense charged when it tends to establish a systematic scheme or plan embracing the commission of two or more offenses so related to each other that proof of one tends to establish the other, or to connect the defendant with the commission of the offense charged.

(e) In support of an information, charging the filing of a false claim with intent to defraud the state, and that by such false pretense the defendant did obtain from the State Auditor a warrant for the amount of the claim, evidence is admissible of other instances when he did the same thing, as tending to show guilty knowledge or intent, and that the offense charged was a part of a plan or scheme to cheat and defraud the state.

2. TRIAL—Offer of Evidence—Statement of Purpose—Instruction. Where evidence is offered tending to prove that the defendant has committed an offense other than that for which he is on trial, good practice requires that the prosecuting attorney should state the purpose for which the evidence is offered, and, if it is admissible for that purpose, the trial court should instruct the jury as to the purpose for which they may consider it.

3. WITNESSES—Documentary Evidence—Admissibility—Res Gestae —Admission Against Interest. On the trial of an information in two counts, the first charging the larceny of a state warrant, the second charging the filing of a false claim with intent to defraud the state, and that by such false pretense the defendant did obtain from the State Auditor said warrant, the proof showed that defendant secured a contract to do legislative printing, and employed the W. Printing Company to do the said printing, that said company delivered to defendant claims against the state for the amount of printing delivered, that the warrant in question was secured by the defendant upon one of these claims, one item of which had been raised from 282 House Journal pages at $1.10 a page to 710 pages at $1.10 a page. It also appeared that three other similar informations were pending against defendant at the time of the trial. The president of the W. P. Co. testified that the claims against the state were made out from the books of the W. P. Co.; that the entries therein were made in the usual course of business by witness and by the secretary and by an employee; that he knew the entries were correct when made; that he had no present independent recollection of the entries in the books or in the claims delivered to the defendant. The secretary testified that when the entries were made they were correct; that the entries relating to the claim upon which the warrant in question was obtained were made by witness. Another witness testified that some of the entries were made by him as an employee of the W. P. Co., and the entries so made were correct; that he assisted the president and secretary of the company to count the pages of printing done, and knows that the entries were correct when made. During the examination of each witness the book with the entries therein was offered in evidence by the state. To the use of the book in evidence the defendant objected. The court sustained the objections, and excluded the evidence offered. The president of the W. P. Co. was recalled and stated that without the book he could not state the facts stated therein. He was then asked to refer to the book to refresh his memory and state the amount of legislative printing done, which, on the defendant's objection, he was not permitted by the court to do. The state reserved objections to the rulings of the court. **Held:**

(a) That said book, with the entries therein, was admissible, not only as independent evidence of facts forming a part of the res gestae, but also as declarations or admissions made by the defendant against his interest; and further held that, on the testimony of witnesses that the entries therein were made in the usual course of business, and known by them to have been correct when made, said book with the entries therein was competent and admissible as evidence of the facts therein stated.

(b) Held, further, that, whether the witness retained a present independent recollection of the facts therein stated or not, the witness had the right to refresh his memory by consulting on the witness stand the entries in said book, and the same was also admissible as a means of verification or confirmation of what the witness stated from memory.

(Syllabus by the Court.)

*Appeal from District Court, Oklahoma County;*
*John J. Carney, Judge.*

J. M. Rule was acquitted of grand larceny and obtaining a warrant under false pretenses, and the State appeals on questions reserved. Questions answered in opinion.

This case comes to this court under the third subdivision of section 5990, Rev. Laws, upon exceptions taken by the prosecuting attorney to certain rulings of the trial court, excluding evidence offered by the state.

The facts of the case, as shown by the record, are as follows: On the 5th day of December, 1913, the county attorney of Oklahoma county filed an information in the district court of said county, containing two counts. In the first count the defendant was charged with the crime of grand larceny committed in taking by fraud and stealth a certain state warrant, described in the information, payable in the sum of $1,310.20. In the second count the defendant was charged with the crime of obtaining the said warrant under false pretenses. On January 15, 1914, the case proceeded to trial.

It appears that on the 13th day of January, 1911, the Third Legislature of the state of Oklahoma was in session, and, by resolutions of the House and Senate, the standing committees on legislative printing were instructed to let a contract for the legislative printing of the 1911 session of the Legislature. Bids were received for the printing, among which was the bid of the

defendant, J. M. Rule. It was determined by the committees to award the contract to the defendant, and agreeably to the laws and regulations prevailing in such matters, the Board of Public Affairs of the state of Oklahoma was directed to enter into a written contract with the defendant for the legislative printing, and on said 13th day of January, 1911, a contract was entered into between the Board of Public Affairs and the defendant; the contract being prepared in two parts, or separate contracts, one for the House printing and one for the Senate printing, at certain prices therein named. The defendant employed the Warden Printing Company of Oklahoma City to do the printing at prices agreed upon by a verbal contract entered into between the defendant and the Warden Printing Company, and they entered upon the discharge of this contract and performed certain services for the defendant.

Payments were not made at any stated time, but from time to time, as the work progressed; the company rendered its bills showing the amount of printing delivered to the Legislature since the last previous statement. For the purpose of having its bills presented in regular form, the Warden Company obtained from the Board of Public Affairs the blanks which are prescribed for use in presenting bills for materials and supplies to the state. In each instance, when a bill was made out, it was made by the Warden Printing Company on these blank vouchers, and was made in triplicate. Each voucher showed the number of pages of each separate class of printing, the contract price per page, and the aggregate amount of the items in each bill; the Warden Printing Company retaining one of the copies for its use in its settlement with defendant under his contract with the company, and delivering to the defendant the remaining two copies of the vouchers, which, after being properly certified and sworn to by him according to the regulations of the State Auditor's office and of the office of the Board of Public Affairs, were to be filed by him, one copy with the Board of Public Affairs, and the other copy with the State Auditor. The warrant in question was issued upon one of the vouchers so filed, and, upon comparison of the vouchers filed with the Board

of Public Affairs and the State Auditor with the copy retained by the Warden Printing Company, it was ascertained that, after delivery of the two triplicates to the defendant, the items purporting to show the number of pages of House Journals printed as made by the Warden Printing Company and delivered to the defendant had been raised from 282 pages at $1.10 a page to 710 at $1.10 a page; that the aggregate amount for printing the said House Journals was raised from $310.20 to $781, and that the gross amount had been raised from $839.40 to $1,310.20, and that the defendant presented said voucher so raised and filed one copy thereof with the State Board of Public Affairs and a duplicate copy with the State Auditor; that the claim was allowed for the amount shown on the face of the voucher, $1,310.20; and that the defendant in that way received his warrant for that amount. A copy of the voucher upon which the warrant in question issued is set out in the information in words and figures as follows:

Order No. Contract 123, Claim No. 10806. Original.
March 7th, 1911.

The State of Oklahoma in Account with J. M. Rule, Address Oklahoma City, Okla.

For supplies as follows: Department Legislative House, Fund Leg. Contg.

| Quantity Article | Received and Price | Amount | Date |
|---|---|---|---|
| 588 Pages House Printing Bills | .90 | 529.20 | |
| 710 Pages House Journals and Calendars | 1.10 | 781.00 | |
| Total Amount claimed. | | $1310.20 | |

Checked and Found Correct for $1,310.20.

Approved by (Recd) Remark Received by R. D. Elkins

O.K. G. A. Crossett.

S. F. Whitman, Chairman.

W. A. Durant,
Speaker of House.

Giles W. Farris, State Printer.

The undersigned, upon oath doth depose and say that the above account is just, true and correct and according to law, and to the provisions of the contract under which the items mentioned therein were furnished; that the materials and supplies were furnished as therein charged and that the amount claimed after allowing all just credits, is wholly unpaid, and that I have full knowledge of the facts herein set forth and that I am duly authorized to make this affidavit.

J. M. RULE,
*Claimant.*

Subscribed and sworn to before me this the 8th day of March, 1911.

LIBBY GOLDMAN,
*Notary Public.*

My commission expires January 18, 1914.

Checked and approved for———by W. N. B., Jr.

Check and approved for $1,310.20 by———.

Audited and approved for $1,310.20 this the 1th day of March, 1911.

STATE BOARD OF PUBLIC AFFAIRS,

E. B. HOWARD, *Chairman.*

EUGENE E. MORRIS.

The defendant presented to the State Auditor raised vouchers and drew three other warrants for printing done by the Warden Printing Company under the same contract and surrounded in all respects by the same circumstances. Informations were filed by the county attorney on each of the last named three transactions similar to the information filed in this case. These cases were numbered on the calendar of the district court, respectively, 3612, 3617, and 3618, and were pending when the defendant went to trial in case numbered 3619—the case upon which this appeal is based. After the jury had been duly impaneled and sworn, counsel for the state suggested to the court the settlement of the legal question which it was claimed was involved in the case and the determination of which, by the court, would materially influence and affect the opening statement of the prosecuting attorney to the jury, and, for the purpose of determining the question, it was deemed advisable by

the court, as well as the parties, that the jury be excused until the question could be presented. It was then stated by the prosecuting attorney that the question for the consideration of the court was this:

"That the prosecutor claimed the right, and so proposed to state to the jury, that, as bearing upon the intent of the defendant at the time when he committed the acts charged in the information, the prosecutor would introduce evidence showing other transactions on the part of the defendant between the same parties and arising out of the same transaction, and proposed to state to the jury that these other acts were to be offered for the sole purpose of showing the criminal intent on the part of the defendant at the time when he committed the acts charged in the information in this case."

The court held that, in making the opening statement and in the introduction of evidence, no statement should be made concerning other purported misappropriations of the state's funds, and evidence of the same would not be admitted. This ruling of the court was excepted to and constitutes what is alleged by the plaintiff in error to be a material error in the trial.

When the prosecuting attorney had made his opening statement, counsel for the defendant elected to then make the statement of the defense and what the evidence would show, the material part of which is as follows:

"Now, we propose to show that Mr. Rule's statements of this account were correct; that the property was actually delivered there—not alone by our own testimony but by the testimony of the state's witnesses themselves. Now, why—there is the bill—I mean the claim, prepared and delivered to the officers of the House. Now, this is a part of the state's case, gentlemen—received by R. D. Elkins—that proof will develop that he was Auditor of the House—not Auditor, I mean the property man of the House. We will prove by R. D. Elkins, or his first assistant—their testimony—the assistant by which that audit was made—that this property was delivered, counted page by page and copy by copy, and that this notation here, 'Received by R. D. Elkins,' is the result of a careful audit made by Mr. Elkins and his particular department. It will develop that G. A. Crosscut was the chief clerk of the House, and on this bill (the basis of the prosecution) will be found the O.K. of G. A. Crosscut. I would like to have the actual claim, Judge

Thompson, in this case. (Judge Thompson hands to Mr. Ready.) Mr. Ready (continuing): Here is the original bill or claim upon which this prosecution is based. 'Received by R. D. Elkins.' Now it will develop that G. A. Crosscut was chief clerk of the House. You see G. A. Crosscut's signature and his O.K. on that claim. G. A. Crosscut, if necessary, will testify before you as to what was done—what investigation he made. Now, G. A. Crosscut will appear here, and it will appear from his testimony that he made a thorough investigation of this printing; that he was satisfied that this bill was proper in its presentation, for the amount of printing delivered for the price charged. It will develop during the trial of this case that Mr. S. F. Whitley at that time was a member of the House of Representatives; that he had the position of chairman of the committee of public printing; that he made certain investigations and O.K.'d this bill: 'S. F. Whitley, Chairman Committee of Public Printing.' We will prove that S. F. Whitman signed that. It will develop further—a matter that you already are aware of—that Mr. W. A. Durant was the Speaker of the Third Legislature. It will develop in the proof that this is his signature: 'W. A. Durant, Speaker of the House.' You see on this particular bill, gentlemen, checked and found correct, for $1,310.20: 'Giles W. Farris, State Printer.' It will develop in the proof that Mr. Henry McGill, who was at that time Assistant State Printer, signed that name. It will develop in his testimony that he personally checked each page and copy of this printing. It may develop that he checked this together with Mr. W. M. Brown, Jr., the chief clerk of the State Board of Affairs; that Mr. Brown will testify he made this investigation, checking accurately each page of printing done, as shown by this bill. You will see on this bill checked and approved for $1,310.20, W. M. B., Jr. It will develop in proof that Mr. W. M. B., Jr., is Mr. W. M. Brown, Jr., of the State Board of Affairs. On this same bill you will find E. B. Howard and Eugene Morris; those are the signatures of those two gentlemen who were at that time, and I think are at this time, members of the State Board of Affairs. This contract was originally entered into between Mr. Rule and this State Board of Affairs. It will develop that Mr. Rule, after the approval of this claim, called at the State Auditor's office and inquired if there were any warrants there for him; that there were warrants there; that they were delivered to him and upon the warrant calendar in the presence of the State Auditor or his assistant, J. M. Rule signed for those warrants. Now, gentle-

men of the jury, I mean at this time only to give you a general idea to what the defendant expects to prove in this case —we are here charged with two offenses, grand larceny of those two warrants, that the proof will develop that we signed for and receipted for and the obtaining of this property—of these particular warrants under the alleged false pretenses that we did not deliver this property to the state Legislature, although O.K.'d by every officer in charge of the department to which this was delivered and by every department of the state which this claim affects "

It further appears that in the progress of the trial it was shown by the officers, managers, and employees of the Warden Printing Company that the company kept, in the regular course of its business, a set of books, showing its transactions, and that in said book there was a record of all matter pertaining to the printing done under the contract alluded to in this case; that said records showed the date of printing, the actual amount of printing, and all necessary information. The books were offered in evidence for the purpose of proving the facts contained in them, and, on objection made by the defendant, they were excluded, and the question was reserved by the state for the consideration of this court.

When the state rested its case, the defendant moved the court to advise the jury to return a verdict of not guilty. Thereupon the court, without requiring the state to elect upon which count it would stand, instructed the jury as follows:

"Gentlemen of the jury, you now are advised by the court that under the present state of the case it is the opinion and advice of this court that you should return a verdict of not guilty against this defendant. I will state to you that this advice of the court you are not absolutely compelled to follow, but you are advised that you shall go to your jury room, select one of your number as foreman, and there you may, if you so desire, find the defendant not guilty, or guilty, or disagree, as you gentlemen think proper according to your individual opinion. But you are advised by the court that it is the opinion and judgment of this court that the defendant is not guilty and that you should return a verdict accordingly."

The jury returned their verdict finding the defendant J. M. Rule not guilty. The court rendered judgment discharging the defendant.

An appeal was perfected upon the questions reserved by the state by filing in this court on the 26th day of May, 1914, a petition in error with case-made.

*D. K. Pope,* Co. Atty., and *H. Y. Thompson,* Asst. Co. Atty., for the State.

*Vaught & Ready, Stuart, Cruce & Cruce,* and *McAdams & Haskell,* for defendant in error.

DOYLE, J. Counsel for plaintiff in error in their brief state:

"The questions which the state desires to present to the court for its consideration in this case are as follows:

"First. For the purpose of showing criminal intent, can other transactions, similar in character and arising between the same parties and out of the same transactions, be introduced in evidence in the trial of a criminal cause?

"Second. Are books, kept by a person, firm, or corporation in the usual course of business, after being properly verified, receivable in evidence as proof of the facts therein stated, in the trial of a criminal cause?

"Third. In the trial of a criminal cause, does the law forbid the use of a book after proper authentication, by a witness, for the purpose of refreshing his memory?"

We will consider and answer the questions presented in the order in which they are set forth.

As a general rule, evidence of other offenses, though of the same nature, is not admissible for the purpose of showing that the defendant is guilty of the particular offense charged. The reason for the rule is that no person shall be convicted of an offense by proving that he is guilty of another. To this rule, however, there are exceptions, which are well stated in Cyc. They are in part as follows:

"The general rule does not apply where the evidence of another crime tends directly to prove defendant's guilt of the crime charged. Evidence which is relevant to defendant's guilt is not rendered inadmissible because it proves or tends to prove

him guilty of another and distinct crime. It often happens that two distinct offenses are so inseparably connected that the proof of one necessarily involves proving the other, and in such a case on a prosecution for one evidence proving it can not be excluded because it also proves the other. Evidence of another and distinct crime is admissible if it was committed as part of the same transaction and forms part of the *res gestae.*"

"Where the nature of the crime is such that guilty knowledge must be proved, evidence is admissible to prove that at another time and place not too remote the accused committed or attempted to commit a crime similar to that charged."

"Evidence of other crimes similar to that charged is relevant and admissible when it shows or tends to show a particular criminal intent which is necessary to constitute the crime charged. Any fact which proves or tends to prove the particular intent is competent, and cannot be excluded because it incidentally proves an independent crime. Where the question is whether a certain act was intentional or accidental, evidence to show that accused intentionally committed similar acts before is relevant to show intent."

"Where the crime charged is part of a plan or system of criminal action, evidence of other crimes near to it in time and of similar character is relevant and admissible to show the knowledge and intent of the accused and that the act charged was not the result of accident or inadvertence. This rule is often applied where the crime charged is one of a series of swindles or other crimes involving a fraudulent intent for the purpose of showing this intent." (12 Cyc. pages. 406 to 411 inclusive.)

Says. Prof. Wigmore:

"To prove intent, as a generic notion of criminal volition or willfulness, including the various non-innocent mental states accompanying different criminal acts, there is employed an entirely different process of thought. The argument here is purely from the point of view of the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but the oftener similar in-

stances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them. * * * In short, similar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, *i. e.,* criminal, intent accompanying such an act; and the force of each additional instance will vary in each kind of offense according to the probability that the act could be repeated, within a limited time and under given circumstances, with an innocent intent. * * * It will be seen that the peculiar feature of this process of proof is that the act itself is assumed to be done, —either because (as usually) it is conceded, or because the jury are instructed not to consider the evidence from this point of view until they find the act to have been done and are proceeding to determine the intent. This explains what is a marked feature in the rulings of the courts, namely, a disinclination to insist on any feature of common purpose or general scheme as a necessary requirement for the other acts evidentially used. It is not here necessary to look for a general scheme or to discover a united system in all the acts; the attempt is merely to discover the intent accompanying the act in question; and the prior doing of other similar acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent." (Vol. 1, sec. 302, Wigmore on Evidence.)

We are of opinion that evidence of other similar transactions under the same contract, whether before or afterwards, was relevant to the issue, and was not made inadmissible by reason of the fact that it would tend to prove the defendant guilty of another offense than that charged in the information. It was clearly admissible for the purpose of proving guilty knowledge, or the intent with which the act charged was committed. They were acts of the defendant in a continuous series of transactions with the same party under the same contract, and were precisely of the same character as the act for which he was being tried, and they were so connected that they formed a part of the *res gestae,* and were a part of the entire transaction under the defendant's contract to do the legislative printing for

the House of Representatives. It may be regarded as settled that where the offense charged is so connected with the other offenses sought to be proved as to form a part of an entire transaction, evidence of the latter may be given to show the character of the former. We think the evidence offered was clearly admissible under the first three of the exceptions stated above. It seems to us that the evidence offered was also admissible under the fourth exception stated above, for the purpose of proving a pre-existing design, or systematic scheme or plan, on the part of the defendant to cheat and defraud the state, which included the doing of the particular act charged.

In the case of *Koontz v. State,* 10 Okla. Cr. 553, 139 Pac. 842, this court said:

"Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or to connect the defendant with the commission of the crime charged."

The question of controlling importance which is raised upon this appeal is the admissibility of the books of the Warden Printing Co., as offered in evidence by the state, and upon the defendant's objections excluded by the trial court.

The contract of the defendant required that on each legislative day he should furnish two hundred copies each of the House Journal and Calendar, and two hundred copies of all bills ordered printed.

S. R. Warden testified that he was president of the Warden Printing Company, that the defendant employed the Warden Printing Company to do the legislative printing required under his contract with the state, and the Warden Printing Company did the same. That the bills or vouchers for said printing were made out in triplicate and delivered to the defendant, except that one copy was retained for settlement with the defendant; that these bills were made out from the books of the Warden Printing Company. That the entries in the books were made by witness and by Mrs. Warden, who was secretary

and treasurer of the Warden Printing Company, and by an employee, D. V. Carruth; that the entries were made in the regular course of business. That when the entries were made in this book of original entries he counted the pages and checked them up and made a correct entry; that the claims or vouchers furnished the defendant for legislative printing were correctly made out in accordance with the number of pages printed as shown by the entries in this book. That he had no independent recollection of the number of House bills, journals, and calendars, or the number of pages contained in each as set forth in the claims so furnished. That the defendant settled with the Warden Printing Company on the basis of the claims so made out and delivered to him by the company.

The state then offered in evidence the book which, for the purpose of identification, was marked "Exhibit H." The defendant's objection to the admission of the book in evidence was sustained. Thereupon the state offered in evidence that part of the book containing the entries as made by witness. The defendant's objection was sustained.

Mrs. S. R. Warden testified that as secretary and treasurer of the company she had general supervision of the bookkeeping during the session of the Third Legislature; that the book marked "Exhibit H" was a book of original entries; that the entries indicating the number of pages in the claim in question were made by witness; that when she made the entries she counted the pages and made a correct entry of the number of pages. That Mr. Warden and Mr. Carruth assisted her. That before the claims were delivered to the defendant she counted the pages, listed them, checked them back again and compared them with the entries and found them correct; that she verified each claim "to be sure that they were just as we had gone over them," and then added the total on the adding machine. That independent of the entries, or without the use of the book, witness would not be able to tell the number of pages charged in any one of the claims.

D. V. Carruth testified that part of the entries in the book "Exhibit H" were made by him as an employee of the Warden

Printing Company. That he would always take two copies of each bill or calendar or journal and place them in the tracer, which was an envelope containing the number of the order, and which was filed to go to Mrs. Warden when she made out the claims. That when he made the entries in the book he counted the number of pages of each bill, calendar, and journal, and the entries so made by him were absolutely correct.

The state offered in evidence that part of the book containing the entries upon which the claim in question was made out. The court sustained the defendant's objection thereto. The state again offered in evidence the book "Exhibit H." The court sustained the defendant's objection and excluded the same. The court below seems to have excluded the evidence offered on the ground that it was hearsay, and that its admission would violate the defendant's constitutional right to be confronted with the witnesses against him.

The learned counsel for the defendant in their brief contend:

"Even though identified as the books of the Warden Printing Company, and as having been kept in the regular course of business, they were not admissible as original evidence in this proceeding, for the reason that they were books kept by a third party, and over which the defendant had no control or supervision, and for the further reason that their introduction would have deprived the defendant of his constitutional right to be confronted with the witnesses against him."

We think that these contentions are obviously untenable. The competency of the book "Exhibit H" is clearly established by the testimony, and it should have been admitted on the same ground that any relevant and material documentary evidence, proved to be competent, is admitted.

It appears that the defendant confided the entire business of doing the legislative printing under his contract with the state to the Warden Printing Company. The book contained a detailed statement of the items showing the printing done under the defendant's contract with the state, the entries in which were testified to be correct by the persons who made them. These entries show the number of each order, the date of the

legislative day for which House calendars and journals were printed, and the number of pages of each calendar and journal. Also the number of House bills printed, the number of pages of each House bill, the official number of the bill, and the date of delivery of each order.

It also appears that the defendant settled with the Warden Printing Company according to the entries in this book. This in itself is sufficient to show the delivery of the printing, so done, to the state. If he had secured the warrant in question from the State Auditor, upon a raised claim or voucher, and had secured other warrants upon other raised claims or vouchers and subsequently settled with his agent or employee, the Warden Printing Company, upon the claims or vouchers as originally made out and delivered to him by the Warden Printing Company, it would follow almost necessarily that the defendant knew the claim or voucher in question had been raised and was false when he obtained from the State Auditor the warrant for the amount of the claim.

The statutory rule is found in section 5114, Rev. Laws 1910, which provides:

"Entries in books of account may be admitted in evidence, when it is made to appear by the oath of the person who made the entries that such entries are correct, and were made at or near the time of the transaction to which they relate, or upon proof of the hand-writing of the person who made the entries, in case of his death or absence from the county, or upon proof that same were made in the usual course of business."

We are of opinion that all entries in the book offered in evidence relating to the House legislative printing, were admissible, not only as independent evidence of facts forming a part of the *res gestae*, but also as declarations or admissions made by the defendant against his interest. We certainly know of no decision, rule of evidence, or established principle that requires the exclusion of such evidence when offered in connection with the testimony of the persons who made the entries therein, that they were correct. The constitutional provision, section 28, Bill of Rights, giving the accused the right to be confronted with the witnesses against him, does not apply to the

proof of facts in their nature essentially and purely documentary. In the case at bar, the persons who made the entries were produced as witnesses, and the book was properly identified, and the defendant had the opportunity to cross-examine said witnesses. For this reason no question of the defendant's constitutional right to be confronted with the witnesses against him arises in this case.

In the case of *Curtis v. Bradley*, 65 Conn. 99, 31 Atl. 591, 28 L. R. A. 143, 48 Am. St. Rep. 177, the Connecticut Supreme Court of Errors say:

"Legal evidence is not confined to the human voice or oral testimony; it includes every tangible object capable of making a truthful statement, such evidence being roughly classified as documentary evidence. In oral evidence the witness is the man who speaks; in documentary evidence the witness is the thing that speaks. In either case the witness must be competent,—*i. e.*, must be deemed competent to make a truthful statement. And in either case the competency of the witness must be proved before the evidence is admitted; the difference being that in oral evidence the competency is proved by a legal presumption, and in documentary evidence the competency must be proved by actual testimony, and the further difference that in oral evidence the credit of the witness is tested by his own cross-examination, while in documentary evidence the credit of the· witness is tested by the cross-examination of those who must be called to prove its competency."

It appears that after the court sustained the objection to the introduction of the books of the Warden Printing Company as evidence of what they contained, S. R. Warden was recalled and asked if he could state from memory the dates of printing, and the number of pages of printing on each date, and he said that he could not. He was then asked whether or not he could refer to the books and by refreshing his memory therefrom state the dates and the amount of printing actually done on each date, and he said that he could. He was then subjected to cross-examination concerning what memory he had, and it appears conclusively from the testimony of the witness · that without the aid of the books he could not state the facts, but that with the aid of the books he could correctly state the

facts sought. He was then asked to refer to the books to refresh his memory and state the amount of House legislative printing done, which, on the defendant's objection, he was not permitted by the court to do. This ruling of the court raises the third question presented. The right of a witness to refresh his memory by consulting on the witness stand memorandum or entries known to the witness to have been correctly made at the time of the transaction, is a settled and necessary rule of evidence.

As stated by Mr. Underhill in his treatise on Criminal Evidence, page 267, sec. 217:

"A witness generally will be permitted to speak of those facts only which are within his personal knowledge and recollection. He may aid or refresh his memory, if it is weak or at fault, by consulting on the witness stand a writing or memorandum, whether made by himself or by another person, if, after examining it and because of what he has read therein, he is able to testify of his own recollection thus renewed and revived. The memorandum is not generally, nor need it ever be, competent evidence. Hence the question of its relevancy, or materiality, should not be considered; nor need it be read as evidence to the jury, though it seems that they may examine it to see if the recollection of the witness could have been refreshed. A witness in a criminal trial will be allowed to consult a writing to refresh his memory under the following circumstances: First. If he, while retaining no independent recollection of the facts transcribed, remembers having made the memorandum, or, when it was made by another, if he remembers having seen it, and that, when he saw it, he knew it was correct. The other class of cases includes writings which the witness does not remember having seen before, and of whose contents he has no present recollection, but, being able to identify the handwriting as his own or as that of some other person, and knowing it to be genuine, he is able on consulting the writing, and because of its aid and his confidence in its genuineness, to swear independently, and of his own knowledge, to the facts. Suppose, for example, a subscribing witness recognizes his signature to an attestation clause of a will. His memory refreshed, he may be able to testify to the facts of acknowledgment or publication and subscription by the testator and to other accompanying circumstances, though he may have no independent memory thereof. In regard to the first class

of writings, it is clear that, under certain circumstances, they are admissible as independent evidence forming a part of the *res gestae."*

It clearly appears from the testimony that this is not a case of the use of a book or the entries therein for the mere purpose of refreshing the memory of a witness, but it is a case of a witness who does not profess to be able to repeat from memory the facts stated therein, but who testifies that the entries were made at the time of the transaction as it progressed, and that he knows that such entries were correct when made. We think that it is immaterial whether the witness retained a present independent recollection of the facts therein stated or not, the witness had the right to refresh his memory by referring to the entries therein, and the book with the entries therein was also admissible as a means of verification or confirmation of what the witness stated from memory.

In *Insurance Company v. Weides,* 81 U. S. (14 Wal.) 380, 20 L. Ed. 894, it is said:

"How far papers, not evidence *per se,* but proved to have been true statements of fact, at the time they were made, are admissible in connection with the testimony of a witness who made them, has been a frequent subject of inquiry, and it has many times been decided that they are to be received. And why should they not be? Quantities and values are retained in the memory with great difficulty. If, at the time when an entry of aggregate quantities or values was made, the witness knew it was correct, it is hard to see why it is not at least as reliable as is the memory of the witness."

The case of *State v. Brady,* 100 Iowa, 191, 69 N. W. 290, 62 Am. St. Rep. 560, 36 L, R, A, 693, was an indictment against an overseer of the poor for filing a false claim for furnishing transportation to a poor person with intent to defraud, and that by such false pretense the defendant did obtain from the Auditor a warrant for the amount of the claim. The Supreme Court of Iowa held that memoranda made at the time of the sale of tickets at the office of a railroad company, for a given period, although not books of account, are, when properly authenticated, admissible in evidence for the purpose of showing when and what tickets were sold.

Deemer, J., delivering the opinion of the court, said:

"It is contended that the lower court erred in admitting the records from the ticket office showing daily sales at the city of Ottumwa during the year 1893. This claim presents the question of most doubt in the case. It must be conceded that these records are not books of account such as the statute contemplates. They are, in a sense, expert statements made and caused to be made by the witness who identified them, and are what might properly be termed 'memoranda' made by the witnesses at the time of the transaction. Are these memoranda admissible in evidence, or can they be used by the witnesses who produced them simply as an aid to their recollection? This question has been given widely different answers by the courts of this country and of England. The old common-law rule seemed to be that such memoranda were not admissible; that they could be read by the witness after proper foundation had been laid, even though the witness had no recollection of the matters even after having read them. The modern doctrine, at least in this country, seems to be that such documents are admissible in evidence, and that the court will not go through the useless ceremony of having the witness read a document relating to a fact of which he had no present recollection, except that he knew it was correct when made. The previous holdings of this court on the question do not seem to be in entire accord upon the question. See *Taylor v. Chicago, M. & St. P. R. Co.*, 80 Iowa, 431; *Iowa City State Bank v. Novak*, 97 Iowa, 270, 66 N. W. 186; *Adae v. Zangs*, 41 Iowa, 536. Without attempting to reconcile these cases, we think it sufficient to say that we are constrained to apply the modern—so called American— rule to this case, and hold that the records were admissible. The evidence showed that the agent of the Chicago, Milwaukee & St. Paul and the Wabash and Iowa Central railroads kept a daily record of the tickets sold at his office over the respective lines which he represented; that he was required to do so by a rule or regulation of the several companies; that he kept the record introduced in evidence as 'Exhibit 8,' from March 24, 1893, to January 10, 1894. This record stated to what stations the tickets were sold, and the day of the sale. The agent of the Chicago, Burlington & Quincy Railroad testified that he used a machine in selling tickets over his line, in which there were two pieces of paper. This machine printed a ticket, when called for, upon a piece of paper, and at the same time printed a stub, which was, in effect, a duplicate of the ticket sold. This

stub was sent into the main office of the railway company, as a record of sales. He also testified that this machine prints a register at the same time. The witness presented this record made by the machine for the year 1893, printed upon the stubs before referred to, and it was introduced in evidence. This same witness was also agent for the Rock Island Railroad Company, and he testified that he personally kept a record of the tickets sold over this road during the year 1893, and that the record was correctly kept. This record was also introduced in evidence. Now, it is clear from this statement of the case that none of these witnesses could remember the number of tickets sold by them during the whole year, and it would be absolutely impossible for them to remember with certainty the places to which they sold tickets on any particular day. They would have to rely upon these records, which they identified. It is conceded that they might rely upon them, and might have read from them to the jury, although they may not have been able to remember a single sale. To use the language of Hamersley, J., in the case of *Curtis v. Bradley,* from the Supreme Court of Connecticut, reported in 65 Conn. 99, 28 L. R. A. 143: 'It seems to us to be pressing the use of a legal fiction too far, for a court to permit the statement made by such paper to be read in evidence, while holding that the law forbids the admission as evidence of the paper which is the original and only proof of the statement admitted. In other words, it would seem as if in admitting the paper to be so read, the court of necessity admitted the paper as evidence, and therefore, by the concurrent authority of all courts, the paper is itself admissible.' The learned judge further said: 'All courts recognize that right, and rightly hold that the thing used to refresh the memory is not by reason of such use itself admissible as evidence. When in the application of the rule a document like the one in question was presented to the witness and absolutely failed to refresh his memory, its exclusion as a means of refreshing his memory became imperative; but the evidence of the document was so clearly essential to a fair and just trial that its use in some form seemed also imperative. Instead of treating the paper as itself competent documentary evidence, resort was had to a palpable fiction; the paper is read by the witness, and the knowledge the witness once had of the facts stated by the paper is imputed to him as still existing, and the statement of the paper is received as the testimony of the witness, and the paper itself, the only witness capable of making the statement, is excluded. The use of such a fiction in

the administration of justice can rarely if ever be justified. It is certainly uncalled for in this instance. The principles of law involved to justify the fiction are amply sufficient to support, indeed, to demand, the admission of the document as evidence. There is no occasion to sacrifice truth in order to secure justice. As regards its admissibility as evidence, there is no substantial difference between this paper and any other tangible object capable of making a truthful and relevant statement.' This reasoning is so cogent and logical that we adopt it as peculiarly applicable to the case at bar, and need do nothing further than cite the following additional authorities in support of the rule: *Guy v. Mead,* 22 N. Y. 462; *Haven v. Wendell,* 11 N. H. 112; *Owens v. State,* 67 Md. 307, 10 Atl. 210; *Donovan v. Boston & M. R. Co.,* 158 Mass. 450, 33 N. E. 583; *People v. Dow,* 64 Mich. 717, 33 N. W. 597; 2 Rice Ev. pp. 748-751. There was no error in the admission of this evidence."

The doctrine of the foregoing cases, which has sometimes been called the American doctrine, seems to be best supported by reason and principle.

We do not deem it necessary to discuss the conflicting authorities, for we are satisfied, on principle, that the evidence in question is relevant and admissible, and that the trial court erred in its rulings excluding the same.

In conclusion it may be said that when evidence is offered tending to prove that the defendant has committed an offense other than that for which he is on trial, good practice requires that the prosecuting attorney should state the purpose for which the evidence is offered, and if it is admissible for that purpose, the trial court in the instructions given, when requested by the defendant, should instruct the jury as to the purpose for which they may consider such evidence.

ARMSTRONG, P. J., and FURMAN, J., concur.