## W. E. SAWYER v. STATE.

No. A-9880. Nov. 19, 1941.

(119 P. 2d 256.)

Walter Hubbell, of Walters, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant was charged by an indictment presented and filed by a grand jury of Cotton county with the crime of embezzlement, was tried, sentenced to serve three years in the State Penitentiary, and pay a fine of $263.64, and he has appealed to this court.

The indictment charges the defendant with having, on or about the 4th day of July, 1933, while acting as treasurer of the city of Walters school district No. 1, of Cotton county, embezzled the sum of $131.82 belonging to said school district.

It is first contended that the court erred in sustaining an objection by the state to evidence offered by the defendant concerning a compromise settlement between the county attorney and the defendant, wherein it was contended by the defendant that the state had agreed to dismiss the present case upon condition that the defendant plead guilty in two other cases then pending.

The record discloses that the same contention was set forth by the defendant in a motion to dismiss, presented to the court before the trial began.

Evidence was introduced by the defendant in support of his motion to the effect that on the 31st day of October, 1938, he had four felony cases pending in the district court of Cotton county. That he had a discussion with the county attorney and the Assistant Attorney General, wherein it was agreed that if he would enter his plea of guilty in two of said cases and receive a four-year sentence in each, the sentences to run concurrently, that the other two cases then pending against the defendant would be dismissed. That in pursuance to this agreement and understanding, the defendant entered his

pleas of guilty in cases Nos. 648 and 653, and was sentenced to serve four years in the State Penitentiary in each of said charges, with the further provision that said sentences would run concurrently. That he was immediately committed to the State Penitentiary and served until the 7th day of January, 1939, at which time he obtained a parole from the Governor of the State of Oklahoma.

The Assistant Attorney General testified in response to the proof of the defendant on said motion to dismiss that negotiations were had both with the defendant and his attorney in the office of the county attorney; that the cases were set for trial at that time; that so far as the Attorney General's office was concerned, he agreed that if the defendant would plead guilty in the two perjury charges, he would recommend a sentence of four years each, which might run concurrently. That the attorney for the defendant then asked if they would thereupon dismiss the remaining cases, to which the Assistant Attorney General replied they would not do so, as they had been unable to keep a convicted public official in prison under the Marland administration, and they were going to hold these cases back as a guaranty against a parole. That they did agree that if the defendant would plead guilty in the two cases and serve the full time on those two sentences, the other cases would not be pressed and would ultimately be dismissed.

In connection with this contention of the defendant, the court dictated the following statement into the record:

"The court desires to make this statement in the record. That the court is not familiar with all of the negotiations that were had by the various parties for the reason that the court was not present at all the time. The court was present during a portion of the discussion

between the defendant and his attorney and the county attorney and the Assistant Attorney General, but that at no time in the presence of the court was any specific promise made of a specific dismissal of the cases in question, nor was any approval of the specific dismissal of the case at bar ever made by the court."

The attorney for the defendant admits in his brief that such an agreement, if made as contended by the defendant, would not be a defense to the charge for which he was being tried.

Of course, if the matter is not a defense to the charge, there is no legal foundation for the submitting of the same to the jury. The facts were submitted fully to the court in the hearing upon the motion to dismiss. The court in passing upon said motion evidently accepted the version of the Assistant Attorney General as being correct as to the result of the conference had with the defendant and his attorney, and overruled the motion to dismiss.

While this contention may not properly be a matter of defense, we feel it proper to state that this court would unhesitatingly reverse this case if the record had disclosed that an unfair advantage had been taken of the defendant by inducing him to enter a plea of guilty in two cases under a promise that two other cases would be dismissed, which agreement was made in the presence of the court with his silent acquiescence, if not expressed consent, but the record herein does not support such a state of facts.

The defendant next contends that the court erred in denying his application for a change of judge. Defendant made an affidavit to the effect that the trial judge had been present during part of the discussions, the result of which he entered his pleas of guilty in two per-

jury cases, and had stated that there was no agreement that the embezzlement cases, including the present case, should be dismissed upon the pleas of guilty in the other cases.

Section 2911, O. S. 1931, 22 Okla. St. Ann. § 571, is the applicable statute relating to disqualification of judges. There was no allegation in the application to disqualify the trial judge which would have brought it within the terms of this statute. There was no claim in the application presented to the court, and it is not now contended by the defendant in his brief before this court, that the judge was prejudiced against the defendant, but they apparently rely upon the single proposition that the judge should be disqualified because he knew something of the negotiations had between counsel for the state and the defendant concerning the pleas of guilty entered in the former cases, and did not sustain the defendant's motion to dismiss.

In State ex rel. Nowakowski v. Lockridge, 6 Okla. Cr. 216, 118 P. 152, 154, 45 L.R.A., N.S., 525, Ann. Cas. 1913C, 251, this court stated:

"* * * in order to disqualify a judge, it must be shown that he is biased against, or entertains ill will or hostility toward, the defendant, of such a character as might prevent him from giving the defendant a fair trial. * * *"

In 30 Am. Jur. 82, p. 790, it is said:

"Personal knowledge of a judge of former proceedings before him is not a disqualification, nor is he disqualified to sit in a criminal case because he has recently sat at the trial of another cause growing out of the same state of facts, which resulted in a conviction."

No bias or prejudice is shown on the part of the trial judge, and no error was committed in refusing to sustain the defendant's application for change of judge.

It is next contended that the court erred in admitting evidence on behalf of the state concerning a shortage in the school funds of some $6,800, from May, 1932, to February, 1936, while J. T. Sawyer, brother of the defendant, was treasurer of the school district, and further erred in admitting evidence of a shortage of $400 during the period from February, 1936, to September, 1937, which was the period of time after the death of defendant's brother, J. T. Sawyer, and a period when the defendant was officially appointed treasurer of the school district. The court also admitted in evidence proof that the defendant did not furnish a bond to the school district as required by law, although he furnished a certificate to the county clerk that he had, in fact, furnished such bond.

The proof of the state was to the effect that while the defendant's brother, J. T. Sawyer, was the duly appointed and official treasurer of the school district during the period from May, 1932, to the death of J. T. Sawyer, in February, 1936, the defendant was the clerk of the school district, actually had charge of the treasurer's books, and did all of the work of the treasurer, including the registering of the warrants in the name of his brother, J. T. Sawyer, during this period. That after the death of his brother, the defendant was appointed treasurer, but did not give a bond as required by law.

The warrant involved was payable to the school district as transfer fees from another school district. The defense offered in this case was that the defendant cashed the $131.82 warrant in question and turned the proceeds over to the president of the school board to pay certain laborers performing work on the school grounds cash for their services. That, although such procedure might not be technically authorized by law, the defendant was act-

ing in good faith, and that the school district received the full benefit of the proceeds from the said warrant.

The evidence objected to by the defendant in connection with this assignment of error was brought out on cross-examination of the defendant. The state, by its cross-examination, showed by admissions of the defendant that he had presented a false certificate to the county clerk, reciting that he had complied with the law in furnishing a bond to the school district in the sum of $10,000, so as to legally authorize the county clerk to deliver warrants belonging to the Walters school district to the defendant as school district treasurer. The defendant further admitted the shortages in the sum of $6,800 and $400, as disclosed by the audit made by the examiner. No explanation of these shortages was attempted by the defendant.

With the question of good faith on the part of the defendant, in his handling of the warrant in dispute, of primary concern, the method of defendant's handling of the school district funds in other particulars became of importance as to whether it would tend to show a guilty scheme or plan on the part of the defendant to embezzle funds of the school district and the intent with which the acts alleged by the state to have been illegal were performed.

Under the theory of the state, the embezzlement of the particular warrant set out in the indictment was only a part of a general scheme of unlawful transactions had by the defendant during the period when he was the official treasurer or during the period when he acted as treasurer for his brother.

We think this evidence of a shortage in the defendant's accounts as treasurer was competent and comes

within the rule that proof of other offenses may be admitted in evidence upon the trial of the defendant where the same was a part of a general system, scheme or plan, and to prove the intent with which the act alleged to have been perpetrated was done. State v. Rule, 11 Okla. Cr. 237, 144 P. 807; Reniff v. State, 53 Okla. Cr. 448, 13 P. 2d 592; Boyer v. State, 68 Okla. Cr. 220, 97 P. 2d 779; L. Jones v. State, 69 Okla. Cr. 244, 101 P. 2d 860; Burns v. State, 72 Okla. Cr. 409, 117 P. 2d 144.

Lastly, it is contended that the evidence is insufficient to support a conviction.

This action was instituted under the provisions of section 7761, O. S. 1931, 19 Okla. St. Ann. § 641, which relates to embezzlement by public officials. The state proved that the warrant for $131.82 was delivered to the defendant, that he cashed the warrant at the county treasurer's office, and that there is no record in the books of the school district showing the disposition of the proceeds of said warrant; and it is not accounted for in any manner by any of the books or records furnished to the State Examiner who made an audit of the school district books.

The defense that the warrant was cashed and the proceeds delivered to the president of the school board to pay certain workmen in cash so that they would not have to wait for their money was very indefinite. The president of the school board testified that the defendant left money at his store to pay workmen sometimes, but he could not recall the amounts. He further testified that no claim was filed by the laborers in connection with their work nor any record kept as to how much money was disbursed.

Charles Cox testified that he performed work on the school grounds during the summer of 1933; and that Mr. Burgess, the president of the school board, paid him in cash for his work. He did not know how much was paid to him, and no estimate of the amount which he received was given.

This testimony merely raised an issue for determination by the jury. On account of the indefinite nature of this evidence, it evidently was not given much credence by the jury as they returned their verdict of guilty.

After an examination of the entire record of this case, we are convinced that the defendant had a fair and impartial trial, and that there are no errors in the record of sufficient importance to require a reversal of this case.

It is accordingly affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.