# L. JONES v. STATE.

No. A-9715.   April 18, 1940.
(101 P. 2d 860.)

Gomer Smith and Nelson Rosen, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis R. Morris, Co. Atty., and Walter Marlin, Asst. Co. Atty., both of Oklahoma City, for defendant in error.

JONES, J. L. Jones and R. V. Boyer were jointly charged in the district court of Oklahoma county with the offense of forgery in the second degree; a severance was granted; the defendant, L. Jones, was tried and convicted by a jury which left the punishment to the court. The court thereupon sentenced the defendant, L. Jones, to a term of two years in the state penitentiary, and he has appealed to this court.

The state's proof showed that R. V. Boyer was director of the Oklahoma county welfare board. That on March 30, 1935, he directed his secretary, Comanan Biewer, to write several relief requisitions, approximately 50 in

number. Most of these requisitions were for the sum of $10, and the names of the relief clients shown thereon were taken from the relief rolls of Oklahoma county. These requisitions were issued to different persons in all sections of Oklahoma county, but they all managed to get into the hands of the defendant, who presented them for payment to the county clerk's office. It was stipulated that the names of the relief clients shown on each of the requisitions were forged thereon, and it was further stipulated that the relief clients named in the requisitions did not secure any groceries or supplies on any of the requisitions.

All of the requisitions written on March 30th were identified as exhibits and introduced in evidence. The signature, L. Jones, appears on the back of each of these requisition claims; and Ruth Turner Hodges, the deputy county clerk, testified that they were signed by the defendant in her presence. The signature appears on the back of the requisition claims in the space provided therefor as follows:

"Claim

"I, the undersigned, upon oath, depose and say that the above items and amounts represent a true and correct list of Supplies furnished or services rendered to the person or family designated on the reverse hereof and receipted for above, that the amount indicated above is now due and payable, and that I am the person who rendered such supplies or service.

"Signed L. Jones

"Subscribed and sworn to before me this———day of———, 19—

"County Clerk, or Notary Public."

This case is another one of the series of cases growing out of the alleged forgery of relief requisitions in

Oklahoma county. This court has heretofore in two cases, Moss v. Arnold, 63 Okla. Cr. 343, 75 P. 2d 491, and Boyer v. State, 68 Okla. Cr. 220, 97 P. 2d 779, in two able opinions by Presiding Judge Doyle, gone into most, if not all, of the legal questions involved in this appeal.

The defendant contends that there is one distinction between this case and the requisition claim involved in the two above cases, in that in the two above cases the claim involved in the prosecution of those cases was verified, while in the instant case the claim was not verified and for that reason the purported claim is void on its face and the crime of forgery cannot be predicated upon it.

It is undisputed that the identical claim involved herein is not verified. It is signed by the defendant, L. Jones, but the jurat of the county clerk is not placed thereon.

As regards the particular claim here involved and the method used by the county clerk's office in handling these requisitions, the state introduced the testimony of Ruth Turner Hodges, deputy county clerk. She testified that if one person brought a large number of requisitions to the county clerk's office, which requisitions were all owned by one person, as many as could be conveniently scheduled on the voucher which would be issued in payment thereof would be joined together, and the jurat on the back claim would be filled in, and the clerk's seal affixed thereto. The claimant, however, was required to sign each requisition on the reverse side in which he states that the items and amounts entered on the requisition represent a true and correct list of supplies furnished to the person whose name was given thereon, and that the amount indicated was due and payable, and that the person signing the claim was the one who fur-

nished such supplies. In this particular case her testimony showed that the claim involved herein had requisition No. 366. That it also had case No. 805, which was the number identifying the relief client on the records of the welfare department in Oklahoma county. That this requisition, along with several others, was brought to her office by the defendant, who signed his name on each of the requisitions, and she swore him to the top one and bradded them all together and issued voucher No. 171 on the State Public Welfare Fund in the total amount of $134 to the defendant as payment in full for all of the requisition claims appearing in that particular group.

Section 5966, O. S. 1931, 62 Okla. St. Ann. § 301, provides as follows:

"All claims for money due from any county, township, city or incorporated town shall be itemized in detail, verified and filed for allowance with the proper authority not less than five days before the meeting of such body for such purposes. Such verified claims shall show in detail the amount due on each item, the date thereof, the purpose for which each item was expended, and such other facts as are necessary to show the legality of such claim and each item thereof."

This statute is cited by the defendant in support of his contention that the particular claim upon which the prosecution is based cannot be the subject of forgery charges for the reason it is not verified, and therefore it is not of legal efficacy.

The defendant contends that the claim herein involved, along with all other requisition claims, was payable out of county funds by reason of the fact that the legislative act making an appropriation to carry out the provisions of the Welfare Act provided that the funds

so allocated to the counties became county funds, and as such to be expended under the direction of the county welfare board. It is immaterial in the consideration of this cause whether the funds were county or state funds as claims against either fund are required to be verified.

The record herein discloses that many hundreds of requisition claims were being issued by the county welfare board of Oklahoma county; to expedite the handling of these requisitions, the welfare board adopted the policy of treating all of the requisitions which were presented by one person, and which could be conveniently placed upon the schedule shown on the voucher which would be paid therefor, as one account. That the verification on one of the claims would be treated as a verification of the total number of claims that were bradded together, and the claims thus bradded together were treated as one account and given one identifying number to correspond with the number shown on the voucher. While this method of handling the claims is not literally the procedure prescribed by the State Examiner and Inspector under the statute, we hold that it was a substantial compliance with the law.

The prosecution herein is brought under the provisions of section 2125, O. S. 1931, 21 Okla. St. Ann. § 1577, which reads as follows:

"Every person who sells, exchanges or delivers for any consideration any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited, with intent to have the same uttered or passed, or who offers any such note or other instrument for sale, exchange or delivery for any consideration, with the like knowledge and intent, or who receives any such note or other instrument upon a sale, exchange or delivery for

any consideration with the like knowledge and intent, is guilty of forgery in the second degree."

The information filed herein sets forth the requisition claim in detail, and the same will not be set forth in this opinion as similar informations, with the exception of the jurat of the county clerk, as hereinbefore noted, are set forth in the cases of Moss v. Arnold and Boyer v. State, supra.

The numerous authorities cited by the defendant in support of his contention that an instrument void on its face cannot be the subject of forgery because it is not capable of effecting a fraud are not in point here for the reason that the fraud herein was actually perpetrated. The defendant actually uttered and passed the requisition claim to the county clerk who had charge of the payment of the money belonging to the welfare fund. The money was actually delivered to the defendant at that time in payment thereof. The defrauding of the welfare department became complete at that moment. The instrument was sufficient on its face to effect a fraud, and the fraud was actually effected.

We have carefully examined each of the authorities cited and relied upon by the defendant in support of his contention. Most of these cases are cases where the accused was charged with the actual forging of the instrument involved. In the chapter on forgery and counterfeiting in our Penal Code (chap. 15, art. 47, O. S. 1931, 21 Okla. St. Ann. § 1561 et seq.), we find several sections dealing with the actual forgery of certain instruments, to wit: wills, deeds, public securities, shares of stock, bank note plates, checks, and many other instruments. Under these statutes, where a person is charged with the actual forgery of one of these instruments, and the same is void on its face and not legally capable of effecting a

fraud, the accused would not be guilty of forgery under the rule of law contended for by the defendant herein, which is the correct rule as applied to those situations.

Here the defendant, however, is charged with the uttering of a forged instrument with intent to defraud the public welfare board of Oklahoma county. Sec. 2125, supra. This statute not only makes it an offense for every person selling, exchanging or delivering the forged instrument, but further makes it an offense for a person to offer any such instrument for sale, exchange, or delivery with knowledge of the forgery. Under this statute the defendant would have been guilty of forgery if he had offered to pass the requisition claims to another for a valuable consideration, knowing the same to be forged, even though it was not actually passed. Under this statute, if the defendant had offered to pass the claim to the county clerk, knowing the same to be forged, and the county clerk had at that time refused to accept the requisition which was presented, still the defendant would be guilty of forgery.

There are three essential elements of forgery, to wit: a false writing or alteration of an instrument; the instrument as made must be apparently capable of defrauding, and there must be an intent to defraud. These three elements have all been conclusively shown by the state's proof.

In State v. Eades, 68 Mo. 150, 30 Am. Rep. 780, it was held that the fraudulent making of a false certificate of municipal indebtedness is forgery although the municipality has no power to issue such certificates. That the question involved is whether on its face the instrument will have the effect to defraud those who may act on it as genuine, or the person whose name is forged. It is not essential that the person in whose name it pur-

ports to be made has the legal capacity to make it nor that the person to whom it is directed be bound to act upon it as genuine.

See, also, in this connection People v. Bibby, 91 Cal. 470, 27 P. 781; Spicer v. State, 52 Tex. Cr. R. 177, 105 S. W. 813; State v. Hazzard, 168 Ind. 163, 80 N. E. 149; Commonwealth v. Costello, 120 Mass. 358, which all deal with the proposition urged by the defendant.

In Holloway v. State, 90 Ark. 123, 118 S. W. 256, 257, it is held:

"To utter a forged instrument is to put it in circulation, or to offer to do so, with fraudulent intent to injure another."

In the body of the opinion the court uses the following language:

"It is contended on behalf of the defendant that, even if he forged the names of the sureties and delivered the bond to the sheriff, the offense was not complete, for the reason that it was not filed with the clerk as required by statute, and therefore never became operative for any purpose. This contention involves a misconception as to the distinction between the crime of forgery and of uttering a forged instrument. A delivery of the forged instrument is not necessary to constitute and complete the crime of forgery. The elements of that offense are the false making or alteration of an instrument of writing which is apparently valid, with the fraudulent intent to make use of it to the injury of another. 19 Cyc. 1373; Clark on Criminal Law, p. 333 et seq. To utter a forged instrument is to put it in circulation, or to offer to do so, with such fraudulent intent. Elsey v. State, 47 Ark. 572, 2 S. W. 337."

We have hereinbefore in the beginning of this opinion expressed our view that the manner in which these claims were handled by the county clerk's office was in sub-

stantial compliance with the law. Since all of the argument presented by the defendant in his brief is based on the assumption that the action of the county clerk's office in the handling of these claims was not in substantial compliance with the law, our ruling thereon made it unnecessary to consider the question raised by the defendant as to the legal efficacy of these claims. By reason of the fact, however, that the defendant spent many pages in his brief and most of his argument presenting the proposition that there could be no forgery because the instrument was void by reason of the absence of the county clerk's jurat thereon, and the state likewise has extensively briefed the matter, we have made the statements herein above set forth to show that as applied to the offense of uttering forged instruments similar to the one herein involved the law is contrary to the defendant's position even if we should assume that the method of handling the claims was not in substantial compliance with the law pertaining thereto.

The defendant next contends that the court erred in the wording of the instruction given by the court on circumstantial evidence. The instruction complained of reads as follows:

"7th. You are further instructed that the state relies for a conviction, in part, upon what in law is termed circumstantial evidence, that is, proof of facts and circumstances connected with or surrounding the commission of the crime charged from which the guilt of the accused should be inferred. Such proof is as competent, for the purpose of establishing a given fact, as is direct evidence, and should be so regarded by you. It is not necessary that each circumstance introduced in evidence, and relied on by the state, should in and of itself establish the guilt of the defendant, but, each part necessary to the conclusion sought to be established—that is, the guilt of the defendant—must be proved by competent evi-

dence, beyond a reasonable doubt, and each circumstance must be consistent with the other and with the main fact sought to be proved, and inconsistent with any other reasonable hypothesis or conclusion than that of the guilt of the defendant."

The defendant requested the following instruction be given:

"You are instructed that the state relies for a conviction in this case upon what is known as circumstantial evidence, and in this matter you are instructed that, to warrant a conviction upon circumstantial evidence, each fact necessary to the conclusion sought to be established (that is, the guilt of the defendant) must be proved by competent evidence, beyond a reasonable doubt, and that all the facts and circumstances proven should not only be consistent with the guilt of the accused, but consistent with each other, and inconsistent with any other reasonable hypothesis or conclusion than that of his guilt, and sufficient to produce in your minds the reasonable moral certainty that the accused committed the offense charged against him. You are instructed that, when, the circumstances are sufficient under this rule herein given you, they are competent and are to be regarded by the jury as competent for your guidance as direct evidence."

The defendant's requested instruction is identical with the instruction on circumstantial evidence which this court has approved in a great number of decisions. Carter v. State, 6 Okla. Cr. 232, 118 P. 264; Baldwin v. State, 11 Okla. Cr. 228, 144 P. 634; Jackson v. State, 22 Okla. Cr. 338, 211 P. 1066, 1072; Gore v. State, 25 Okla. Cr. 214, 219 P. 153; Ross v. State, 42 Okla. Cr. 227, 275 P. 401; McNeill v. State, 47 Okla. Cr. 53, 287 P. 1045; Walker v. State, 50 Okla. Cr. 333, 297 P. 331.

There is no justification in the court's action herein in refusing to give the defendant's requested instruction. Many years ago this court prepared the form of instruc-

tion on circumstantial evidence which the defendant requested, and recommended its use by the trial courts in this state. If the trial court had been diligent in the preparation of his instructions on circumstantial evidence, he would have found that the defendant's requested instruction was verbatim with the model instruction we have for years advised trial courts in this state to give. But the fact that the trial court chooses to ignore the model instruction on circumstantial evidence which has been in use and approved for years in this state does not necessarily mean that the instruction which he prepared is bad.

The defendant contends that the wording of the instruction is a charge by the trial court on the weight of the evidence and amounts to an order by the court to the jury that the facts and circumstances are such that the guilt of the defendant should be inferred. The instruction is not susceptible of that construction. We cannot see how the jury was confused by this instruction, especially in view of the fact that the court gave the substance of the defendant's requested instruction after telling them the contentions of the state. There is a bare possibility that this instruction standing alone might be confusing to the jury, and we are unwilling to place our stamp of approval on this instruction so that it may be used as a model in the future; but when it is read as a whole and considered in connection with all the other instructions given by the court, we are convinced that the defendant was not prejudiced thereby. It was the duty of the jury, and they were so instructed, to consider the instructions as a whole and no part thereof to the exclusion of any other part. The question raised on this instruction is the most serious question with which this court is concerned in this case, a much more serious ques-

tion than the highly technical proposition raised by the defendant in his contention that the forged requisition could not be the basis of a forgery charge. But after considering the instructions as a whole, and in view of this record where the guilt of the defendant has been so clearly proven, we do not feel that the giving of this instruction has prejudiced the defendant.

The defendant is now 70 years of age. He has reared a large family. Before retiring from business in 1933 he had developed a chain of seven grocery stores in Oklahoma City, which had become known as the Jones Stores. Upon his retirement in 1933 he made a gift of his stores to each of his sons and his two daughters. He continued to maintain an office at one of the stores, but retained no authority nor control over any of the stores. Up to the time of his retirement his career had been very successful and evidenced much hard work on the part of the defendant. The evidence shows that a few months after his retirement, the defendant was arrested for drunk driving and paid a fine therefor. Probably because of the idleness brought about by his retirement from business, this defendant, with plenty of money and an appetite for strong drink, became an easy prey to the fraudulent scheme by the arch-conspirator, Boyer, in which scheme Boyer sold to Jones and other merchants forged requisition claims on the welfare fund. The chief criminal, Boyer, who started this fraudulent scheme, and without whose help the same would never have been established, was tried to a jury and given only a sentence of one year in the state penitentiary. Boyer v. State, supra. In the case herein the jury was unable to agree on the punishment, and the trial court gave the defendant a sentence of two years in the state penitentiary. Under the circumstances presented herein, we are of the

opinion that the ends of justice would be met by reducing the sentence here imposed to one year.

It is therefore ordered that the sentence of the defendant be modified by reducing the same to one year's imprisonment in the state penitentiary, and that the judgment, as modified, be affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.