## BILL TILLMAN v. STATE.

No. A-10584. May 8, 1946.

(169 P. 2d 223.)

J. M. Springer, of Stillwater, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Sam H. Lattimore. Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant Bill Tillman was charged in the district court of Logan county with the larceny of an automobile, was tried, convicted, and sentenced to serve six years in the State Penitentiary and has appealed.

It is contended that the evidence is insufficient to support the verdict, in that there was no sufficient corroboration of the testimony of the accomplice, Bobby Scarborough.

Bobby Scarborough, the alleged accomplice of defendant, testified on behalf of the state that at the time of the theft of the automobile in question on August 2, 1943, he was 15 years of age; that he lived in Stillwater, Okla.; that on the afternoon of August 2, 1943, he met the defendant Bill Tillman and Floyd Madison in front of the Cameron Theater in Stillwater. That they got to talking about girls, and the three of them decided to go to Guthrie; that they went from Stillwater to Guthrie on the bus, arriving about 8 o'clock; that they walked around over the city of Guthrie quite a while, and then went into a cafe where they drank a cup of coffee; that after they had finished the coffee, they started out walking again and as they passed the Patterson Garage, they decided to break into the garage; that they opened a window and he and Floyd Madison went into the building while the defendant Bill Tillman stood watch out in front; that Floyd Madison drove out an Oldsmobile automobile which they got in and started driving, but they saw that it was nearly out of gas, so they parked it and went back to the garage; that the witness and Bill Tillman remained on the outside while Floyd Madison went in and

drove out a black Buick coupe automobile, which was the automobile the defendant was charged with stealing. The three boys then got into the automobile and started driving south out of Guthrie. They made a short stop in Edmond, and then drove on to Norman. They arrived at Norman shortly after midnight. They parked their car on the highway near the Monterrey Cafe at Norman; they went to the cafe and defendant Bill Tillman unfastened the screen, opened a window and entered the cafe. That all three of the boys went into the cafe and got some fried chicken that was lying on a tray, and some nickels and dimes that were in a nickelodeon. They put the money in a little tin box. They also stole about 100 packages of cigarettes and a typewriter at the cafe. The defendant Tillman took out the typewriter. They put the stolen articles in the automobile and started driving south. The witness had formerly been an inmate of the boys reformatory at Pauls Valley, and they stopped the car at Pauls Valley while the defendant visited with some of his former friends at the reformatory. That they later proceeded on south, stopping at Turner Falls where they laid down and slept about an hour. Later they drove on to Ardmore, where the defendant Tillman took the typewriter and sold it at a second-hand store for $4 and divided the money among all three of them.

Subsequently, Floyd Madison took the automobile, drove to a filling station, had it filled with gasoline and left the station without paying for the gas. The three boys started on the road north, driving from 70 to 80 miles per hour. When they slowed down near the city of Pauls Valley, they noticed a highway patrol car following them. They turned into a dead-end street in Pauls Valley and were trapped by the highway patrolmen. The boys were searched and taken to the Pauls Valley jail. Scar-

borough further testified that they had not decided what to do with the car at the time they were arrested, but were on their way to Tecumseh to see some girls. At the time the boys were arrested they had some cigarettes of various brands, with several nickels and dimes laying on the floor of the car with an old sack of money containing small change which fell out of the car when Madison stopped the car and started to run when it was trapped in the dead-end street.

To corroborate the testimony of the accomplice, the state showed by other witnesses that the automobile had been taken without the knowledge or consent of the owner. The testimony of the officers showed that the defendant and his two companions were in the possession of the stolen automobile at the time they were arrested. In the car, according to the testimony of the officers, were several packages of cigarettes of different brands and the nickels and dimes, which, according to the testimony of the accomplice, were stolen from the Monterrey Cafe at Norman. The proof also showed that the defendant sold the stolen typewriter for $4 in the city of Ardmore and the defendant, while testifying in his own behalf, admitted selling this typewriter.

The well-settled rule in Oklahoma is that it is not essential that corroborating evidence shall cover every material point testified to by accomplice or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to one material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense or circumstances thereof. Scott

v. State, 72 Okla. Cr. 305, 115 P.2d 763; Crain v. State, 70 Okla. Cr. 45, 104 P.2d 450, 451; Wilkins v. State, 70 Okla. Cr. 1, 104 P.2d 289; Henson v. State, 69 Okla. Cr. 273, 101 P.2d 1060; Hathcoat v. State, 71 Okla. Cr. 5, 107 P.2d 825; Howard v. State, 70 Okla. Cr. 165, 105 P.2d 440; Robinson v. State, 67 Okla. Cr. 8, 92 P.2d 1082; Hufford v. State, 61 Okla. Cr. 141, 66 P.2d 529; Drew v. State, 61 Okla. Cr. 48, 49, 65 P.2d 549.

In applying this test, we find sufficient circumstances testified to by disinterested witnesses to corroborate some of the principal points of testimony of the accomplice Scarborough. The apprehension of the three boys in the stolen automobile, the selling of the stolen typewriter by the defendant, the possession of the stolen cigarettes and money taken from the Monterrey Cafe and other circumstances were sufficient to require the court to submit the question of the guilt or innocence of the accused to a jury.

It is next contended that the court committed error in allowing the state to prove distinct separate offenses other than the one for which the defendant was being tried. This proposition is directed mainly at the admission of the evidence of the burglary of the Monterrey Cafe at Norman.

This contention may not be sustained for two reasons. The testimony concerning the burglary was by the witness Bobby Scarborough. At the time this evidence was given, no objection was interposed by counsel for defendant. Also the alleged burglary at Norman was so closely connected with the stealing of the automobile and the subsequent flight of the accused and his companions that it is not such a separate offense that the proof of the same would be incompetent. The proof showed that the

automobile had been stolen. It was during the flight with the stolen automobile that the burglary was committed and the articles stolen in the burglary were transported in the automobile and some of them were in the automobile at the time it was recovered.

The general rule is that evidence of other offenses, though of the same nature, are inadmissible for the purpose of showing that the defendant is guilty of the particular offense charged. To this rule, however, there are well-settled exceptions, among them being that evidence of an offense other than the one charged is admissible when both offenses are so closely related and connected as to form a part of the res gestae. Boyer v. State, 68 Okla. Cr. 220, 97 P.2d 779; Michelin v. State, 66 Okla. Cr. 241, 90 P.2d 1081. In State v. Halpin, 16 S.D. 170, 91 N.W. 605, it was held that in connection with the evidence that on the night of the larceny of wheat, defendant borrowed a wagon for hauling grain, and afterwards returned it with pieces broken off, and a new singletree on it; that the tracks of a wagon in which the grain was taken were followed to a place where it got stuck, and there were found the pieces broken from the borrowed wagon; evidence that from a farm near there a horse, singletree, and shovel were stolen that night, the horse being afterward sold by defendant is admissible as part of the res gestae.

In this case the only issue raised by the defendant was that he and his associates did not intend to steal the automobile, but that they intended to return it to the owner. It certainly became competent for the state to trace all the actions of the accused and his associates during their asportation of the stolen property for the purpose of showing whether their actions were such as to

indicate a purpose to permanently deprive the owner of his property.

21 O.S.1941 § 1787 provides:

"From and after the passage of this Act, it shall be unlawful for any person or persons to loiter in or upon any automobile or motor vehicle, or to deface or injure such automobile or motor vehicle, or to 'molest, drive, or attempt to drive any automobile, for joy riding or any other purpose, or' to manipulate or meddle with any machinery or appliances thereof without the consent of the owner of such automobile or motor vehicle."

Counsel for defendant prepared a requested instruction based on this statute and asked that it be given. In his brief, counsel states that the offense set forth in the above statute is an included offense and should be given when any person is charged with stealing an automobile in violation of the statute. 21 O.S.1941 § 1720.

While the defendant is entitled as a matter of law to have his theory of defense clearly set forth in an instruction, we do not think that the statute hereinabove quoted defines an offense which is necessarily included in the charge of stealing an automobile. We do think that where the sole defense is that the accused took the automobile for a joy ride and not to permanently deprive the owner thereof, such issue should be submitted to the jury by a proper instruction.

In this case, the trial court, in three different instructions told the jury that the state must prove beyond a reasonable doubt that the defendant took the automobile without the knowledge or consent of the owner and with intent to permanently deprive the owner thereof. In addition to this general statement, the court gave instruction No. 5, which reads:

"You are instructed that larceny is the taking of personal property, accomplished by fraud or stealth and with the intent to deprive another thereof. You are instructed that in order to constitute the offense of larceny there must be the intent to permanently deprive the owner of the property and to convert the same to the takers own use and benefit."

Counsel also attacked instruction No. 7 and instruction No. 8 given by the court. Instruction No. 7 properly stated the law relative to the necessity of having testimony to corroborate the evidence of an accomplice before the accused could be convicted. This instruction has heretofore been approved by the court. Hendrix v. State, 22 Okla. Cr. 230, 210 P. 734; Wishard v. State, 5 Okla. Cr. 610, 115 P. 796.

Instruction No. 8 is a correct statement of the law as to the admission of the evidence of other offenses. Such instruction followed the opinions of this court wherein it is held that where evidence indicating the commission of another offense is properly admitted, the court should instruct the jury the purpose for which it is admitted and limit them in its consideration of such evidence to that purpose. Smith v. State, 78 Okla. Cr. 375, 148 P.2d 994; State v. Rule, 11 Okla. Cr. 237, 144 P. 807.

After a careful consideration of all the instructions taken together, we think they fairly and correctly presented all issues raised by the evidence.

Counsel complains of the admission of the testimony of the witness Harvey McCutcheon which was given on rebuttal. Although counsel for defendant asserted in their brief that this evidence was clearly inadmissible, it is not shown in just what way it was inadmissible, nor does counsel cite any legal authority to sustain his assertion.

While the defendant was on the witness stand, the county attorney asked him on cross-examination whether he had sent a message to Bobby Scarborough by the witness McCutcheon. The defendant specifically denied that he sent such a message and further denied that he even knew McCutcheon. In rebuttal, the witness McCutcheon testified that he was confined in the Logan county jail temporarily while awaiting trial on a charge that he was a delinquent, that he was adjudged to be a delinquent child and ordered transported to the state training school at Pauls Valley where the accomplice, Bobby Scarborough, had been sent. Prior to the time Scarborough had been sent to Pauls Valley, he had testified at the preliminary examination against the accused. McCutcheon testified that when the defendant Tillman learned that he (McCutcheon) was being sent to Pauls Valley, defendant told him to see Bobby Scarborough and have him change his testimony because Scarborough's time could not be extended and that if he could change his testimony Tillman "might get out of it."

The predicate having properly been laid for the admission of this testimony, we think it was admissible for the purpose of showing an act or statement against interest made by the defendant.

Counsel for defendant showed by cross-examination of the witness Scarborough that there were some discrepancies in the testimony given by the witness at the trial from that given by him at the preliminary examination. This was a matter which the jury could consider as affecting the credibility of the witness, but the discrepancies were not so serious as would justify this court in stating that the testimony given by the witness Scarborough at the trial was false, as is urged by counsel for defendant.

There is ample evidence in the record to support the verdict and we find no substantial errors of law which require a reversal of the judgment of conviction. The judgment and sentence of the district court of Logan county is therefore affirmed.

BAREFOOT, J., concurs. DOYLE, J., not participating.