## FARLEY v. STATE.

No. A-11261.   Dec. 27, 1950.

Rehearing Denied Jan. 31, 1951.

(226 P. 2d 1002.)

Harry C. Kirkendall, Enid, and C. E. Wilhite, Alva, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J. The plaintiff in error, Howard Farley, hereinafter referred to as defendant, was tried and convicted in the district court of Woods county, Oklahoma, for the crime of grand larceny, and the jury being unable to agree upon the amount of his punishment, the same was fixed and assessed by the court, and defendant was sentenced to imprisonment in the penitentiary for a term of one year. Appeal has been perfected to this court.

The evidence discloses that the complainants, B. H. Bloyd and son Glenn Bloyd, in August, 1948, and for many years prior thereto, operated a farm implement business in the city of Alva, Woods county, and for about two years they had kept a two-wheel, home-made trailer, flat bed, 6' x 30', frame built out of "I" beams, tongue

made of round pipe, and that it had airplane wheels. This trailer was used for delivering Krouse "one-way plows" for which they were agents, and when not in use was kept parked on two vacant lots owned by complainants and across from their place of business in Alva. The vacant lots were just back of the Runnymede Hotel. The trailer was lower at the rear end than at the front and was otherwise of unusual construction, being built for the special purpose stated.

The undisputed evidence disclosed that the trailer in question was removed from its parking place on or about August 19, 1948, without the knowledge or consent of the owners; that the elder Bloyd was out of town at the time, but the son Glenn Bloyd reported the theft to the sheriff of Woods county and advertised in the Woods County News, a weekly newspaper, and offered a reward of $50 for the return of the trailer; also, hand bills were circulated over town reporting the loss and offering the same reward.

Some time in September following the theft, one Jay Wert, who had been for 40 years a resident of Woods county and who was familiar with the Bloyd trailer, and a Mr. Ralph Doctor of Alva, who had helped build the missing trailer, started by automobile to Colorado for a short vacation, and about ten miles north of Tribune, Kansas, which was around 225 miles from Alva, Mr. Wert noticed a long, two-wheel trailer with a Krouse "one-way" on it, hooked behind an International truck, and recognized it as the missing Bloyd trailer. The trailer was parked, but Wert and Doctor turned around and a boy who was in the yard by where the trailer was found told them that it was not his, and Wert advised the boy that it was a stolen trailer, and he left his companion there while he drove to Tribune and notified the county

attorney and the sheriff, the latter taking charge of the trailer and thereafter commenced looking for the persons who left it parked. Witness proceeded on his trip.

Thereafter Sheriff Greer of Woods county, Oklahoma, received word from the sheriff at Tribune, Kansas, that he had two men in jail there whom he had picked up by reason of such persons having had possession of the trailer in question and Sheriff Greer found the defendant Howard Farley and one Joe Banks in jail at Tribune.. He subsequently released Banks when Farley told him that Banks was working for him and, "He didn't have anything to do with getting the trailer whatever." Defendant claimed that he had rented the trailer from a man named Wilson, with option to purchase for a total of $200; that he paid $25 for 30 days' rental, same to apply on purchase price should defendant decide to acquire title.

Defendant waived extradition proceedings and returned to Alva with Sheriff Greer, where information was filed charging him with the theft of the trailer.

The evidence developed that the defendant lived on a 3,000 acre ranch not far over the state line in Kansas, and near Hardtner; that he was part owner (with other heirs) of the ranch; that he subscribed for the Woods County News, and did a good bit of his trading in Alva and had purchased items at the Bloyd store, and the senior Bloyd had been acquainted with defendant since 1940.

The defendant testified that he was 26 years of age and unmarried, that he had lived near Hardtner all of his life; that he was engaged in farming and ranching and that he did some custom work of harvesting and ground preparation; that during the summer of 1948 he

engaged in "custom one-waying wheat ground" for a Dr. Fuquay, in southern Oklahoma near Grandfield; that there he first met the Mr. Wilson whom he later dealt with for the trailer that witness had been charged with stealing; that Wilson worked for a Mr. Howard who lived some place in Texas, where, witness did not know, but whose land was located east of the Fuquay land; that he saw Wilson every day for about four days; that Wilson had a gas tractor and a one-way and had a trailer to haul the one-way on. Witness testified that the next time he saw Wilson he just happened to run into him on the streets of Alva, and that Wilson stated that he had heard defendant wanted to purchase a trailer, that he had sold his "one-way" and tractor and had no further use for his trailer and would sell it to defendant, and stated that it was parked on a vacant lot back of the hotel. They went to look at it, defendant decided to try to rent it with privilege of purchasing, and succeeded in doing that. He further stated that he went to the B & B Bar with Wilson and wrote a receipt for $25 and that he and Wilson signed it; that defendant thereafter hooked onto the trailer about dark on August 16, 1948, and drove it to his ranch near Hardtner, Kansas, and the next morning left for Tribune, Kansas.

Defendant stated that it was agreed between Wilson and himself that if he decided not to purchase the trailer he was to bring it back to Alva within 30 days and park it on the lot where he found it; that Mr. Wilson did not give him any address and he did not know Wilson's address; that he had not told Wilson that he lived in Alva or given him any address. Said the defendant:

"A. I didn't tell him I was from Alva. Q. How would he know, then, where to look for you, whether it

was Alva or some other town? A. As near as I know, he just blew in to Alva here. Q. Just accidentally blew in to Alva? A. Yes."

The defendant did not testify as to whether or not he advised Wilson of his home address in case Wilson might want to know where to find defendant in the event the trailer was not returned to Alva within 30 days. In fact, one Banks, defendant's alleged hired hand and who had been arrested with the defendant as one of the persons found in possession of the trailer, was much more versatile in explaining about Wilson than was the defendant. Defendant did say that he saw Wilson once after he rented the trailer from him. He did not explain how Wilson had located him. He was asked:

"Q. Now when was the next time that you saw the man you know as Mr. Wilson? A. Well, it was one day he came out in Colorado, while I was working, and wanted to know if I would buy the trailer, and I told him I hadn't drawed pay and wasn't able to buy the trailer at that time." The Court: "Was that in Tillman county, down near Grandfield, or up in Kansas? A. That was at Tribune, Kansas."

As to the balance defendant was to pay Wilson for the trailer in case he decided to keep it, he testified:

"Q. Now, you paid him this $25, and you agreed to pay him how much more? A. If I wanted to buy the trailer, I was to pay him $175 more. Q. Where were you to pay him that money? A. To him. Q. Sir? A. To this man Wilson. Q. Where were you to pay him? A. At Alva, Oklahoma. Q. At what place? A. Wherever I might meet him. Q. Wherever you might meet him? What bank was you to pay— A. We had no certain place agreed upon. Q. What? A. We had no certain placed agreed upon. Q. Did you have any date fixed to meet him? A. I was to meet him back here in

30 days. Q. In 30 days, at what place? A. At the B & B Bar—that is where I told him I would be if I was in town."

Defendant was asked by the county attorney: "Q. Why didn't you ask me for a warrant for this man for committing this crime against you? A. For the fact I figured I could find him." Witness further added: "I figured I would run into him accidentally here in town." Defendant further testified as to Wilson: "Well, I wouldn't—I couldn't swear that I could recognize him, but I believe I could."

Defendant denied knowing that the trailer belonged to the Bloyds; and though the evidence showed that he had traded there some, he testified that he had never noticed the trailer parked near their place of business until Mr. Wilson made the deal with him. Defendant also denied ever seeing the ad in the Woods County News offering a reward for the return of the trailer or learning from any source that there was any question as to the title or ownership of the trailer until he was arrested.

Defendant testified that after being released on bond he advanced $300 to Joe Banks for expense money to be used in looking for Wilson; that he got traces of him but was unable to locate him. He also offered the testimony of two persons who testified that they saw defendant and a man they identified as Wilson come into the B & B Bar and saw defendant hand Wilson one ten and three five-dollar bills for the rental of the trailer. Witness Jess Guest, a barber, testified that the way he remembered the incident was:

"A. There is just one thing that I can remember of —the fellow that runs the B & B Bar—I think one of these fellows called for a piece of paper; and he says, 'I

have got a check here'—a blank check—and he brought that over there and—'' (Interrupted by defendant's attorney).

Joe Banks, on the other hand, testified to minute details and at length concerning the trade; that it was made in the B & B Bar, second booth from the west end; that Farley gave Wilson three fives and a ten-dollar bill; that defendant "took a check book out of his pocket and tore a check out of the check book—a blank check. and he written on the check and then shoved it over to Mr. Wilson to sign." Witness identified the receipt. He further stated that Wilson was to go to Tribune, Kansas, to get the balance of his money of $175, if defendant decided to purchase the trailer.

Witness Banks further testified that he had been working for defendant for "the last few months" as advance agent to get work for the tractor and one-way, and that most of the time he would operate the machinery at night shift. Witness further testified that Wilson did come to Tribune to try to sell the trailer and then wanted defendant to leave the trailer at Syracuse, but he told him that he would leave it at Alva, as bargained; that after this he and defendant went to Colorado for four days to figure on another job, leaving the machinery behind, and when they returned to Tribune they were arrested for having a stolen trailer.

The evidence developed that both defendant and his witness Jess Guest had paid fines at Alva for being drunk, and that witness Banks had been convicted three times, one time for possession of a stolen automobile tire at Holdenville, once for theft of a wheat drill near Enid and for which he served five years in the penitentiary,

and that he served one year for a conviction in a gambling deal at Carmen.

It was brought out that when Sheriff Greer went to Tribune to get defendant, defendant tried to convince the sheriff that he had rented the trailer and claimed that he told the sheriff about the receipt but did not show the same to the sheriff, though he had it in his billfold, and that the sheriff did not ask to see the receipt signed by Wilson. Sheriff Greer on rebuttal denied that defendant told him anything about a receipt and stated that if he had, he would have wanted to see it.

The evidence, of course, was strictly circumstantial, and the court gave an instruction concerning this. There was ample evidence for the consideration of the jury.

Counsel, for reversal of the case, first contends that the court erred in giving instruction No. 6, involving circumstantial evidence. The only thing objected to was the use of the word "should" in a sentence as follows: "and all the facts and circumstances proved *should* not only be consistent with the guilt of the accused but consistent with each other and inconsistent with any other reasonable hypothesis or conclusion," etc. It is claimed that the word "must" should have been used instead of "should".

From an examination of instructions heretofore approved by this court, we conclude that it would have been preferable for the court to have used the word "must" instead of "should" as in the sentence used. The word "must" is correctly used in other portions of the instructions given, and considering the instruction as a whole we do not think the error claimed sufficient to entitle the defendant to a new trial. See Tit. 22 O.S.A. § 1068.

This principle has been applied as to instructions as a whole, Thompson v. State, 53 Okla. Cr. 342, 11 P. 2d 772, and it would seem just as logical to apply the same principle to a single instruction where a single word is objected to. The instruction complained of has been approved in Jackson v. State, 22 Okla. Cr. 338, 211 P. 1066, and in Carter v. State, 6 Okla. Cr. 232, 118 P. 264. In the first case the court said:

"While the instruction complained of might have been couched in more positive language, we think its meaning reasonably clear, and, when considered in its entirety and in connection with the other instructions given, the jury was told in plain and unambiguous language of the state's burden to prove the defendant guilty beyond a reasonable doubt and that the circumstantial evidence must be so conclusive as to exclude any hypothesis other than that of defendant's guilt."

It is next complained that the trial court erred in giving instruction No. 5, which reads:

"You are instructed that the unexplained possession of recently stolen property found in the possession of one alleged to have stolen the same is a circumstance, which, if unsatisfactorily explained to the jury, may be considered in determining the guilt or the innocence of the persons charged with the theft thereof."

Counsel argues that the instruction is erroneous because the evidence disclosed that the accused explained to the arresting officer his possession of the alleged recently stolen property; that defendant pointed out that he had leased the trailer in question, with the privilege of later purchasing it from a man by the name of Wilson, and supported his statement with a receipt from Wilson acknowledging payment of the rental, and on trial produced two witnesses who heard him make his "deal" with Wilson. The jury considered all these matters and

apparently considered Wilson a fictitious person, not believing the testimony of defendant and his witnesses. The record discloses a number of discrepancies in the testimony, and doubtless the jury weighed the reasonableness of a number of statements made. By the evidence produced by defendant, one Wilson stole the trailer. No doubt the jury pondered over whether or not any person of any intelligence, though a thief and without móral scruples, would act in the way it was claimed Wilson acted in handling such a matter. The burden of proving the truthfulness of his possession was on defendant, and even though his explanation of his possession was reasonable, yet the truthfulness of the explanation given was for the jury to decide. Patton v. State, 54 Okla. Cr. 393, 22 P. 2d 116; Brinkley v. State, 37 Okla. Cr. 362, 258 P. 1071.

In Rogers v. State, 85 Okla. Cr. 116, 185 P. 2d 927, this court said:

"The presumption arising from the possession of recently stolen property is one of fact and not of law. It is a circumstance for the jury to consider and weigh along with all the other evidence in the case. If the possession is unexplained, or if it is unsatisfactorily explained, or the explanation, even though plausible, is not believed, the jury will accord it such weight as they deem right and proper. They are the sole judge as to its weight, and when such fact with the other facts and circumstances in evidence, when given due weight, satisfy the jury beyond a reasonable doubt of defendants' guilt, it is sufficient to sustain the verdict."

It is next urged that the trial court erred in giving instruction No. 7, which reads:

"In considering the testimony of a witness who the evidence shows has heretofore been convicted of an offense, you may consider such fact of conviction only as

it may or may not in your judgment affect the weight or credit you may give to the testimony of such witness."

Counsel for defendant on direct examination in interrogating his chief defense witness, Joe Banks, brought out the fact that said witness had been convicted of three separate felonies, for which he had served time in the penitentiary. He asked his witness if either of his convictions were for perjury, and the witness answered "No". The county attorney on cross-examination went into the nature of the crimes for which witness had been convicted, and without objection on the part of counsel for defendant. Under such circumstances the court gave the instruction complained of. The effect of the instruction was to advise the jury that proof of such convictions did not totally impeach or disqualify the witness Banks, but merely affected the weight or credit to be given his testimony.

Counsel complains that the court should not have given the instruction complained of, citing Hughes v. State, 3 Okla. Cr. 387, 106 P. 546; Heacock v. State, 4 Okla. Cr. 606, 112 P. 949; and Clark v. State, 31 Okla. Cr. 383, 239 P. 2d 275, because it in effect singled out defendant's chief witness Banks. Attention is called to quotation from the body of the opinion in the Hughes case, supra, where it is said:

"We think that it is error for the court to single out any special witness personally, and burden his testimony with any suggestions which might indicate to the jury that in the opinion of the court such witness was liable to testify falsely. Instructions as to the credibility of witnesses should be general and apply equally to all of the witness for the state and the defendant alike. * * *" [3 Okla. Cr. 387, 106 P. 547.]

A study of the cases cited will disclose that this court was striking at the vice of a trial judge singling out

the defendant personally and instructing the jury upon the credibility of his evidence, and condemning the practice of trial courts in giving an instruction which has the effect of bolstering up, or tending to discredit, the testimony of any particular witness or class of witnesses, who may testify in a criminal case. Brumbaugh v. State, 11 Okla. Cr. 596, 150 P. 88. On the other hand, where, for example, it becomes competent (being an exception to the general rule) to admit evidence of other crimes committed by the defendant, under such circumstances, this court has held that the state's attorney should at the time such evidence is offered, indicate the limited purpose for which offered, and that the trial court should follow this up by instructing the jury the purpose for which it is admitted, and limit them in their consideration of such evidence to that purpose. Smith v. State, 78 Okla. Cr. 375, 148 P. 2d 994; Tillman v. State, 82 Okla. Cr. 276, 169 P. 2d 223; Spivey v. State, 69 Okla. Cr. 397, 104 P. 2d 263. And where, for example, the defendant may have been convicted of perjury and ordinarily, Tit. 21 O.S.A. § 505, could not testify, yet where he is charged with a felony he will be permitted to testify in his own behalf unimpaired by the statute. Lowe v. State, 58 Okla. Cr. 233, 52 P. 2d 115. Also, any witness, though he may have been convicted of any felony except perjury, is not disqualified from testifying as a witness in the courts of Oklahoma. Tit. 12 O. S.A. § 381, and Price v. State, 9 Okla. Cr. 359, 131 P. 1102.

So, where, in the case of a witness for either the defendant or the state, evidence is admitted and limited to the purpose of affecting the credibility of such witness, showing prior conviction or convictions for crime, the state or the defendant, as the case may be, by the same principle involved when such evidence was admit-

ted as to a defendant, would be entitled to an instruction by the trial judge, limiting the purpose for which such evidence was admitted, as otherwise such evidence might prejudice the defendant or the state, as the case might be, beyond the scope for which the testimony was admitted. For such reason, we conclude that the court did not err in giving the instruction complained of.

Counsel for defendant, though he excepted to the instructions given by the court did not submit any suggested instructions. We have examined the instructions given as a whole, and do not conclude that the instructions given have resulted in a miscarriage of justice or that there has been a substantial violation of a constitutional or statutory right. Stokes v. State, 86 Okla. Cr. 21, 189 P. 2d 424, 190 P. 2d 838.

It is finally urged that the court committed error in permitting the county attorney to cross-examine the defendant as to his convictions in police court. We do not conclude that this was error in that the crimes for which convicted constitute offenses under the state law. Wheatley v. State, 77 Okla. Cr. 122, 139 P. 2d 809; Chambless v. State, 90 Okla. Cr. 423, 214 P. 2d 947.

Under the same heading it is urged that it was error to admit in evidence the offer, through handbills and newspaper advertising, of the $50 reward for the return of the trailer, made by the Bloyds at the time of discovery of the loss thereof. There is no merit to this contention, for the reason that the state was attempting to show that wide publicity of the theft was made by the Bloyds; that the defendant had retained the trailer for more than thirty days and was bound to have known that the title to the trailer was vested in the Bloyds and that it had been stolen from them. He was shown to have

been a subscriber to the Woods County News in which the advertisement was published, though he denied reading the notice or of having it called to his attention until after his arrest. It was a matter bearing upon the ultimate facts to be decided by the jury.

For the above reasons, the case is affirmed.

On Petition for Rehearing.

In the petition for rehearing it is pointed out that in addition to the two cases cited in the opinion by this court, that in Jones v. State, 69 Okla. Cr. 244, 101 P. 2d 860, the instruction on circumstantial evidence as given by the trial court in the within case was specifically approved, and that it was pointed out therein as having been in the past recommended to the courts.

That is true, but this is the first time, so far as we can find, that the instruction has been attacked in respect as in the within case, except as might be gleaned from Judge Matson's statement in Jackson v. State, 22 Okla. Cr. 338, 354, 211 P. 1066, that it might be couched in more positive language.

It will be noted from an examination of the great number of decisions of this court since statehood, where the instruction now complained of was given, that in many of them the court has stated in substantially this language:

"Where circumstantial evidence is relied upon for conviction, the circumstances proved must not only be consistent with each other, but consistent with the defendant's guilt and inconsistent with any other reasonable hypothesis." Hicks v. State, 70 Okla. Cr. 284, 106 P. 2d 136, 139; Brady v. State, 57 Okla. Cr. 203, 46 P. 2d 963; Star v. State, 9 Okla. Cr. 210, 131 P. 542. And see Inklebarger v. State, 8 Okla. Cr. 316, 127 P. 707.

Keeping in mind that the burden of proof in criminal cases rests on the state, and that the circumstances must be such as to exclude every other hypothesis except the defendant's guilt, and considering that "must" is defined in Webster's New International Dictionary as "Necessary to a result", and is positive, we conclude, after consulting law dictionaries and references, that this word is more consistent with the spirit of the other wording of the instruction in question than is the word "should".

Counsel earnestly insist, on the strength of Jackson v. State, supra, and Knight v. State, 73 Okla. Cr. 107, 118 P. 2d 255, 256, that this case should be reversed by reason of the giving of instruction No. 5. In the Jackson case, the defendant did not testify, and the court rejected certain offered evidence on behalf of defendant, but received certain evidence on behalf of the state that defendant complained of. This exclusion, in connection with evidence received on behalf of the state, plus the instruction given which in some respects was similar to the instruction here complained of, resulted in the reversal of the case. The court in the body of the opinion said:

"The fact that defendant did not testify in his own behalf would lead the jury to believe from the wording of the instruction that defendant had offered no explanation of his possession of the car, and that therefore his possession remained entirely unexplained, and that such circumstances should be weighed against him."

In the Knight case, the instruction indicated that there was no explanation of defendant's possession of recently stolen calves, and tended to emphasize that defendant did not testify. However, defendant had told a deputy at the time of his arrest that the calves were

purchased by his brother Robert from a man by the name of J. J. Parker, and that accused had assisted in loading the calves. There was no other evidence of accused's possession. The evidence was wholly circumstantial, but the court failed to give an instruction on circumstantial evidence. This court held that the instruction given misled the jury by instructing them that the possession of defendant had been unexplained, and that where the evidence was wholly circumstantial, that it was error for the trial court to fail to give an instruction on that subject, whether the defendant had so requested or not.

While in the instant case instruction No. 5 complained of and quoted in our opinion could have been improved by the elimination of the word "unexplained", and adding after the words "alleged to have stolen the same," the words "may be explained, but such possession [continuing] is a circumstance", etc., yet the jury did hear from the defendant personally and from his witnesses, an explanation of defendant's possession, and it appears to this court, well understood from the instruction given in connection with the other instructions, that if the possession was satisfactorily explained, they must find the defendant not guilty.

The petition is denied.

BRETT, P. J., and JONES, J., concur.